No. 22,579.

J. A. THOMPSON and F. D. THOMPSON, Partners, etc., *Appellees, v.* THE UNION TRACTION COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. HIGHWAY—*Surface Oil Pipe—Escaping Oil—Fire — Damages — Demurrer to Evidence.* There was no error in overruling the defendant's demurrer to the plaintiffs' evidence.

2. SAME—*Incompetent Evidence.* There was evidence from which the jury could ascertain the value of the machinery destroyed, and there was no reversible error in the admission of incompetent evidence.

3. SAME—*Instructions.* There was no error in refusing to give requested instructions.

4. SAME—*Motion for Judgment on Findings.* It was not error to deny the defendant's motion for judgment on the findings of the jury.

Thompson v. Traction Co.

5. SAME—*Motion for New Trial.* The motion for a new trial was properly overruled.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed July 10, 1920. Affirmed.

*John J. Jones,* of Chanute, and *Chester Stevens,* of Independence, for the appellant.

*Sullivan Lomax,* of Cherryvale, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiffs recovered judgment for the damages sustained by them on account of the loss of a traction engine and threshing machine, and the defendant appeals. This is the second time this action has been in this court. (*Thompson v. Traction Co.,* 103 Kan. 104, 172 Pac. 990.)

The facts disclosed by the evidence as abstracted in the present appeal are not substantially different from those set out in the opinion on the former appeal, but some different questions are argued. The main facts material for an understanding of the questions argued by the defendant are that it maintained an oil pipe line on the south side of a public highway in Montgomery county; that the pipe line was laid on the top of the ground; that an inspection of the ground would have disclosed that the pipe line was there; that the plaintiffs were engaged in threshing grain; that they desired to move their machinery, a traction engine and a threshing machine, from the public road into a field adjoining the road on the south; that when for that purpose they attempted to drive out of the road into the field, they drove across the pipe line; that in so doing the engine broke the pipe; that the oil which was being pumped through the pipe escaped therefrom and was ignited by the fire in the engine; and that the engine and threshing machine were destroyed by the fire.

1. The first question argued by the defendant is that "the court erred in overruling the demurrer of the appellant to the evidence of the appellees." This argument is based on the contention that the evidence did not show that the pipe line was in the highway. The plaintiffs' evidence tended to show that the place was a public highway; that there was a fence along the south side of the highway; and that the pipe line

was between the fence and the traveled portion of the road. That evidence was sufficient to compel its submission to the jury, justified overruling the demurrer to the evidence, and brings the present situation within the terms of the decision rendered on the former appeal.

2. A second contention is that "the court erred in the admission of evidence as to the value of the threshing machine." Henry Behner, who had owned and operated a threshing machine for a number of years, testified:

"The machine had run the eighth or ninth season. I think $1,500 would be a fair price for it. Threshing machines do not have a ready market, and it is hard to sell for ready cash. . . . The front end of the separator was the worst burned. The wind stacker on the back end was hurt very little. At that time a new wind stacker would cost $250. This stacker was practically new."

### D. P. Curlis, a dealer in machinery, testified:

"I am familiar with the fair and reasonable value of new, rebuilt and secondhand machinery. . . .

"Q. Mr. Curlis you may state whether or not this machine, after it had been repaired, is what you would call a rebuilt machine or not. A. It undoubtedly was a rebuilt machine.

"Q. I will ask you whether or not you examined it? A. No sir, I did not.

"Q. That is, not carefully? A. Not carefully; no, sir.

"Mr. Stevens: What do you mean by that? Do you mean that you did examine it or didn't examine it? A. I mean that I did not go over this machine and look at each and every part, but I do mean I was to the machine and saw it in operation.

"Mr. Lomax: Now from what you saw and knew of that machine, taking into consideration the repairs it had on it that spring, would you have an opinion as to its fair, reasonable market value? A. I have my own judgment as to its value.

"Q. What is your judgment as to its fair, reasonable market value? A. I would consider it an easy sale on $2,700 or $2,800.

. .  .  .  .  .  .  .  .  .  .  .  .

"Q. Do you think that he could sell it yet for cash on the 21st day of August, 1915, for $2,800? A. I'll answer that in this way. We sell these threshing machines mostly on time. We never have sold except one for cash. It's a time price on threshing machines. As one of the witnesses I heard testify, a man was always poor that owned a threshing machine.

. .  .  .  .  .  .  .  .  .  .  .  .

"I was out there in October or November, 1915, and looked at the machine.

"Q. Have you an opinion as to what the cost would be to rebuild it?
. . . A. I'm speaking of the engine, now, understand. Engine
alone. And the expert that I took there said that it would cost about
$1,200."

J. A. Thompson, one of the plaintiffs, testified:

"I would not say that the outfit was worth more than $1,500 in 1915.
. . . After the fire we went off and left the outfit where it burned."

One witness, a junk dealer, testified that the engine and
threshing machine were worth $50 as junk. That witness
further testified:

"I didn't pay much attention to the separator. All I saw was burned
up and twisted. I didn't pay much attention to it. The iron on the
separator I couldn't use because it is most all steel and I use most always
cast iron."

That evidence was sufficient to enable the jury to determine
the value of the engine and threshing machine. While some
of the evidence introduced to establish these facts may have
been incompetent, yet the court is unable to see wherein the
admission of that evidence materially prejudiced any substan-
tial right of the defendant.

3. Another complaint by the defendant is that the court
refused to give certain requested instructions. Those instruc-
tions were as follows:

"One of the contentions of the defendant is that the pipe line was
plainly visible across the gap through which the plaintiffs attempted to
drive their threshing outfit. If you find and believe from the evidence
that said pipe line or a substantial portion thereof, was visible where
it extended across the gap through which the plaintiffs attempted to
drive their threshing outfit, and you further find and believe from the
evidence that the plaintiffs did not see said pipe line, or having seen it,
failed to properly protect it by placing planks over it or covering it
with dirt, or in some other manner protecting it, and then attempted
to drive their threshing oufit over the same, the plaintiffs cannot re-
cover in this case and your verdict will be for the defendant and against
the plaintiffs. And in this connection you are instructed that if a thing
is visible and within the range of vision of the person complaining, that
it makes no difference whether he saw it or did not see it, for the law
presumes that he saw what he should or could have seen had he looked
and does not excuse him because he did not see it."

"You are instructed that in this country a vast number of pipe lines
conveying oil and natural gas are maintained over, along and across
the public highways within the same. If you find and believe from the
evidence in the case that the plaintiffs, or either of them, knew of the

custom and practice of laying pipe lines conveying oil and natural gas over, across, under or along the public highway, then it would be their duty to exercise care and caution in attempting to use that portion of the highway not worked or traveled, for the purpose of ascertaining whether such unworked or untraveled portion was reasonably safe for the passage of their threshing outfit, and if you find and believe from the evidence in·this case that they did not exercise such ordinary care as herein defined to you, and by reason thereof ran over the pipe line of the defendant, if you find that the defendant owned and controlled the pipe line, in question, and their threshing outfit was destroyed, damaged, or injured, then they are guilty of such contributory negligence as will bar them from a recovery in this action, and your verdict will be for the defendant and against the plaintiffs."

The principle embodied in these instructions is analagous to that part of the railroad law of this state applicable to one who, on a public highway, is about to cross a railroad track. The principle does not appear to be applicable to one who is driving out of a public highway into an adjoining field. When this action was here before, this court said:

"In taking their threshing outfit into a field adjoining the highway, in order to thresh a crop, the plaintiffs were entitled to use not only the worn part of the highway but also the whole width of the same so far as it was necessary." (*Thompson v. Traction Co.*, 103 Kan. 104, 172 Pac. 990. syl. ¶ 2.)

If the plaintiffs had the right to use the entire highway, they had the right to assume that they could leave the traveled road and go into the adjoining field with safety, except that they must not encounter such dangers as were manifest by a casual observation of the road. They were not bound to use the precautions that a traveler must use when he is about to cross a railroad track, and the court cannot say as a matter of law that they were guilty of contributory negligence for failing to look for, or see, danger, or for failing to protect their machinery against the pipe line if they saw it. In *Murphy v. Gas & Oil Co.*, 96 Kan. 321, 150 Pac. 581, the plaintiff was injured while driving an engine and a threshing machine out of a field into a public road, where he broke a gas pipe line. The escaping gas became ignited and seriously injured him. This court there said:

"The plaintiff had a right to assume that the highway was safe from one side to the other. He was under no obligation to make an examination of the highway for the purpose of ascertaining whether or not

gas pipes were laid thereon. The evidence shows that neither the plaintiff nor his father knew of the existence of the gas pipe before the explosion." (p. 331.)

In *Cunningham v. Clay Township*, 69 Kan. 373, 76 Pac. 907, this language was used:

"To be free from contributory negligence it is not necessary that one using a highway known by him to be defective exercise more than ordinary care, but he must adapt his conduct to that condition and employ such care as may justly be regarded as ordinary, in view of his knowledge of such defect." (syl. ¶ 6.)

The most that can be said in favor of this contention of. the defendant, even if the plaintiffs saw the pipe line, is that different minds might reasonably come to different conclusions concerning the contributory negligence of the plaintiffs. This then presented a question for the jury to determine. (*K. P. Rly. Co. v. Pointer*, 14 Kan. 37; *Kemp v. Railway Co.*, 91 Kan. 477, 479, 138 Pac. 621; *Wade v. Electric Co.*, 94 Kan. 462, 469, 147 Pac. 63; *Wade v. Electric Co.*, 98 Kan. 366, 371, 158 Pac. 28.) The instructions of the court properly submitted to the jury the question of contributory negligence, and it was not error to refuse to give the instructions requested by the defendant.

4. The fourth proposition argued is that "the court erred in refusing to sustain the motion of the appellant for judgment in its favor on the special findings of the jury." The special findings of the jury were as follows:

"1. Do you find that just before plaintiffs attempted to drive their threshing machine across the pipe line of the defendant at the entrance of Henry Burns's field, the one operating the engine walked over to the gap and looked at said line? 1. No.

"2. If you find for the plaintiffs do you allow them anything for loss of profits on threshing for which they had no contracts? 2. No.

"3. What, if anything, did the plaintiffs or either of them do to protect the line from injury when they attempted to drive their machine over and across the same? 3. Nothing.

"4. Was the public highway mentioned in plaintiff's petition a regularly laid out highway? 4. Yes.

"5. If you answer to the above question 'Yes,' how wide is such highway? 5. Fence.

"6. How far, in feet, was it from the center of the worked part of the highway to the pipe line where it crossed the gap through which plaintiffs tried to drive their threshing outfit? 6. On or about 28 feet.

"7. How long had the plaintiffs owned and operated the machine? 7. Nine years.

"8. What was the assessed value of the threshing outfit in 1915? 8. Don't know.

"9. Could the plaintiffs by the exercise of ordinary care on their part have protected the line so as to prevent breaking it when they drove their machine over it?  9. Yes, had he known it was there.

"10. How much do you allow the plaintiffs for and as the value of their threshing outfit?  10. $1,500.00."

The argument of the defendant is based on the answers to questions numbered 5 and 6 and on the record evidence introduced by it to show that the established road was forty feet wide. The defendant contends that under the sixth finding the pipe line could not have been in the public highway. The difficulty with this contention is that the evidence introduced by the defendant showed that the pipe line was twenty-eight feet from the center of the traveled road, but the evidence did not show that the center of the traveled road was the center of the highway. The pipe line may have been twenty-eight feet from the center of the traveled roadway and yet have been within the established highway. A careful reading of the findings does not disclose any reason for rendering judgment in favor of the defendant.

5. The last matter urged is "that the court erred in overruling the defendant's motion for a new trial." This is based on the argument advanced to support the other contentions of the defendant and must follow the conclusion reached thereon. It has not been shown that there was error in overruling the motion for a new trial.

The judgment is affirmed.