[Civ. No. 16672.   Second Dist., Div. Three.   June 16, 1949.]

MARION C. LONG, JR., Appellant, v. STANDARD OIL COMPANY OF CALIFORNIA (a Delaware Corporation), Respondent.

Licker & Bernstein, David Licker and William M. Wallace for Appellant.

Reginald I. Bauder and Henry E. Kappler for Respondent.

SHINN, P. J.—Plaintiff was awarded judgment on a verdict for damages resulting from the drowning of his 4-year-old son. Defendant's motion for new trial was granted and plaintiff appeals from the order.

The order granting a new trial did not specify insufficiency of the evidence as one of the grounds. The trial judge stated in a memorandum of his ruling, and an entry in the minutes of the department clerk also stated, that the order was granted upon the ground that an instruction that was given was deemed to be erroneous and prejudicial to the defendant.

The contentions of the parties are the following: Plaintiff denies that the court made the order within 60 days after the filing of defendant's motion for new trial, and seeks a reversal of the order upon that ground. He also claims that there was no error in the instructions which would warrant the granting of a new trial. Defendant insists that the order was made in time and seeks to justify it upon two grounds, namely, that the court committed prejudicial error in its instructions, and even if no error had been committed the order should be affirmed for the reason that there was no evidence whatever that defendant was guilty of negligence or breach of duty in maintaining the premises upon which the boy was drowned.

Defendant's motion for new trial was filed February 10, 1948. April 10, 1948, was the last day upon which the court could grant the motion. On April 9, the motion was argued and submitted. On the same day the judge filed a "Memo of Decision of Defendant's Motion for a New Trial." It appears from the memorandum that the judge considered the question of the sufficiency of the evidence of defendant's

negligence and concluded that he could not determine it to be insufficient. The memorandum referred to a certain instruction and concluded: ''Under such circumstances I am compelled to grant defendant's motion for a new trial on the ground that said instruction was erroneous and misled the jury.'' On the same day the department clerk made the following entry: ''Motion of defendant for a new trial, heretofore submitted, is granted on the grounds that an instruction given, requested by the plaintiff, was erroneous and misled the jury. Memorandum of decision is signed and filed and copies are mailed to the attorneys.'' Plaintiff's argument appears to be that the memorandum itself was not a written order granting the motion, and that the clerk took it upon himself to make the minute order without any direction from the judge that he do so. The judge's memorandum, it is claimed, only indicated his intention to make an order, and did not constitute authority to the clerk to make the minute entry. The answers to the argument are obvious and conclusive. The memorandum, when handed to the clerk for filing, constituted a direction to the clerk to make a minute entry of an order granting the motion. A clerk who would not so understand it would be sadly lacking in intelligence. It must be presumed either that the clerk and the judge understood such to be the effect of the memorandum, or that they discussed it and the judge informed the clerk that the motion was granted.

Since the 1929 amendment of section 166 of the Code of Civil Procedure (Stats. 1929, ch. 487, p. 849), it is settled that a motion for new trial may be disposed of in chambers by informal oral directions to the clerk. (*Hackel* v. *Los Angeles Ry. Corp.*, 31 Cal.App.2d 228 [88 P.2d 178].) The cases relied upon by plaintiff were decided prior to the amendment and are not in point. The record discloses nothing whatever in conflict with, or much less to overcome, the presumption that official duty was regularly performed. Further discussion of the point is unnecessary. (See *Monterey Club* v. *Superior Court*, 44 Cal.App.2d 351, 354 [112 P.2d 321]; *Hart* v. *Capital Film Co., Inc.*, 54 Cal.App. 659, 664 [202 P. 483]; *Spaulding* v. *Howard*, 121 Cal. 194, 197 [53 P. 563].)

Before we enter upon a discussion of the other points, a statement of the nature of the action is required. A leak developed in an oil pipeline of defendant. In order to repair it, defendant made an excavation some 8 or 10 feet wide from east to west, 12 to 15 feet long from north to south, and about 8 feet deep. The leak was repaired on the day following the

making of the excavation. The hole filled with water and some oil to a depth of about 8 feet at the south end, and it remained open until after the fatal accident to plaintiff's son three weeks later. Defendant drove into the ground several half-inch pipes which extended about 3 feet above the ground. One was located near the southeast corner of the excavation, one near the southwest corner, one near the northwest corner, with two posts in between. A rope was strung from post to post, fastened near the top of each post, but hung loosely to within about 1 foot of the ground between posts. On the east side, there was one additional post a short distance from the southeast corner with a rope stretched between the two posts. The north end of the hole was unguarded—likewise a greater part of the east side, although there was located along the east side a pile of dirt that had been excavated in making the hole. The excavation was located 8 or 10 feet east of the edge of the pavement on Gaffey Avenue in San Pedro. There was no sidewalk at the location. From the edge of the pavement there was a noticeable slope downward toward the excavation for a short distance, and from there on a comparatively level space. The terrain was rough and there were weeds and long grass in the vicinity, some of which extended to the edge of the excavation. The banks of the hole were vertical, or nearly so. In photographs that were taken shortly after the accident, and which were in evidence, the surface of the water was shown to be from 2 to 3 feet below the surface of the surrounding area. The witnesses described the water as muddy and brown, with traces of oil floating on top. It was also described by plaintiff as having about the same color as the surrounding earth, and there was some debris floating on top of the liquid.

It will be important to mention the character of the neighborhood. There was evidence that approximately 100 yards to the west of the excavation there were several hundred small houses constituting what is known as the Western Terrace project. Within a quarter of a mile there was another housing project known as the Banning Homes. These were veterans' housing projects. There was evidence that signs were maintained indicating that there were 1,500 children living in the Banning Homes, and 1,200 in Western Terrace. There was testimony that there were several paths between the two housing locations, and that one of them extended over the spot where the hole was dug, and that this path was used by people residing in the vicinity to pass from one housing

project to the other. A police officer, one of those who had searched for the body of the child and who arrived shortly after it was recovered, testified that he had traveled on Gaffey Avenue past the excavation each day, and had never noticed the hole until after the occurrence of the accident. Marion C. Long, Jr., plaintiff, lived in the Banning Homes project with his wife, Bert Long the deceased child, an older boy, a daughter, and Mrs. Long's mother. He was in the trucking business and was away from home on the day of the accident. Mrs. Long had gone into town for a dental appointment, leaving Bert with her mother, Mrs. Webb. The child was playing in front of the house, occasionally coming inside. While Mrs. Webb was feeding the baby and giving the other boy some medicine, Bert disappeared, and his body was not found until the following day. He was aged about 3 years and 10 months. He was described as an intelligent, obedient boy, and had been told by his grandmother not to leave the vicinity of the house.

The instruction which the trial court considered to be erroneous and prejudicial was given at the request of plaintiff and reads as follows: "I instruct you that a father may maintain an action for the injury or death of his minor child when such injury or death is caused by the wrongful act or neglect of another, and in such action, such damages may be given as under all of the circumstances of the case may be just." The trial court was unquestionably correct in ruling that the instruction should not have been given. Plaintiff insists that it was a proper instruction because it states the substance of sections 376 and 377 of the Code of Civil Procedure. This was not a good reason for requesting the instruction. The codes are replete with provisions relating to the rights of litigants and matters of procedure which do not relate to the duties of juries and with which they are not concerned. Statements of general principles which furnish no assistance in the determination of the issues are likely to result in confusion and should be avoided. It served no purpose to inform the jury that plaintiff had the right to maintain the action. If he had not had that right the action would not have been on trial.

Defendant contends that the instruction set up a formula under which plaintiff would be entitled to a verdict, and that the omission of the element of contributory negligence rendered it prejudicially erroneous. The trial court was of the same opinion and placed the order granting a new trial upon

that ground. We would not hesitate to agree with this view if the issue of contributory negligence had not been covered by other instructions. The matter was, however, the subject of several instructions. We do not deem it necessary to set them out at length. The jury was instructed that one who is guilty of contributory negligence may not recover from another for the injury suffered, and that contributory negligence is negligence which, cooperating in some degree with the negligence of another, helps in proximately causing the injury of which the former thereafter complains. Another instruction was to the effect that a child is not held to the same standard of conduct as an adult, and is only required to exercise that degree of care which ordinarily is exercised by children of like age, mental capacity and experience. It was stated in another instruction that the burden was upon defendant to prove negligence on the part of plaintiff, and that such negligence contributed in some degree as a proximate cause of the death of the child. Again, the jury was instructed that if both parties were found to have been negligent the question of liability was to be determined without comparing the negligence of one with that of the other. The instructions to which we have referred sufficiently emphasized the issue of contributory negligence to bring it forcibly to the minds of the jurors. We regard it as altogether improbable that the instructions as a whole misled them or resulted in confusion. There was no conflict between the instructions on contributory negligence and the criticized instruction. ■ If a rule of law is stated in one instruction and a pertinent exception to the rule is stated in another, it is to be assumed that jurors of ordinary intelligence would consider the two together, and not disregard the exception. Furthermore, the erroneous instruction must have been regarded by the jury as an abstract statement as to the general nature of the action. And if it is not a fact of general knowledge that parents may sue for the wrongful death of a minor child the jury, as we say, would have understood that the instruction stated only what they would have known from the mere fact that the case was on trial. We think the possibility that the jury was misled into the belief that plaintiff could recover even if his contributory negligence was shown by a preponderance of the evidence was so remote that it should have been disregarded entirely. (See *Stephenson* v. *Southern Pac. Co.*, 102 Cal. 143 [34 P. 618, 36 P. 407].)

■ Defendant also claims that the court erred in stating in several instructions that the burden was upon it to estab-

lish the defense of contributory negligence by a preponderance of the evidence. The contention is that the jury might have understood that defendant's evidence alone was to be considered in determining the issue of contributory negligence. There was nothing in the instructions which suggested the construction defendant places upon them. Moreover, the jury was instructed that in determining whether negligence, proximate cause or contributory negligence, had been proved by preponderance of evidence, they should consider the evidence of both parties, each of them being entitled to "the same benefit from evidence that favors his cause or defense when produced by his adversary as when produced by himself." The latter instruction was properly given as a separate instruction and the subject was correctly and fully covered.

Another instruction claimed to be erroneous reads as follows: "The testimony of one witness worthy of belief is sufficient for the proof of any fact and would justify a verdict in accordance with such testimony even if a number of witnesses have testified to the contrary, if from the whole case considering the credibility of witnesses and after weighing the various factors of evidence you should believe that there is a balance of probability pointing to the accuracy and honesty of the one witness." The words "would justify a verdict in accordance with such testimony" have no proper place in a statement of the rule. As defendant correctly says, proof of a single fact would not warrant a verdict unless it was the sole determinative fact in the case. But we cannot see how the erroneous clause could have been applied to the evidence in the case to the prejudice of defendant. It is not reasonable to believe that the jurors refrained from deciding any of the factual issues upon which liability depended. We find no error in the instructions which was sufficient to furnish a ground for a new trial.

Defendant urges as an independent ground for affirmance of the order that the evidence was insufficient to justify a verdict in favor of plaintiff. As we have already stated, the trial court in ruling upon the motion expressed the opinion that there was no insufficiency of evidence to justify a finding of defendant's negligence and the absence of contributory negligence. Stated briefly, the contention is that the child was a trespasser, and that defendant had no duty to protect him from any injury he might sustain by falling into the excavation and the water contained therein. It is conceded that if the physical conditions were such as to constitute an

attractive nuisance in the legal acceptation of that term, the fact that the child was a trespasser would not be a sufficient defense. However, many cases are cited by defendant in support of the rule which was stated in *Demmer* v. *City of Eureka,* 78 Cal.App.2d 708 [178 P.2d 472], as follows: "It is a well settled rule of law under the decisions of the courts of this state, and one which is no longer open to question, that a pond or pool of water is not *per se* an 'attractive nuisance' which will subject the owner of the land upon which it is located to liability in the event that a child trespassing upon the property is attracted and lured to play therein and is injured or drowned. [Citing cases.]" Defendant says: "To impose liability upon the defendant in this case would be to give 'lip service' to the well established rules relating to trespassers, and in effect place on the defendant the same duty imposed upon invitors." Two instructions were given upon this subject which, when read together, purported to state the issue to be determined by the jury. An instruction given at the request of defendant read as follows: "You are instructed that the mere fact that the excavation in question on the property of defendants was adjacent to a public highway is not alone sufficient to constitute the defendants liable for injuries resulting from it. Regardless of the location of said excavation and the water contained therein, if the same was open and obvious and was not a hidden or concealed contrivance or did not constitute a trap, then the defendant would not be liable for injury to a trespasser resulting from the maintenance of said excavation." The one given at the request of plaintiff read as follows: "I instruct you that, as to common danger existing in the order of nature, it is the duty of parents to guard and warn their children. But with regard to dangers which are concealed or hidden especially created by the act of the owner of land which are in character novel and attractive and dangerous to children and which may be easily guarded and rendered safe, the said owner should take such reasonable precautions against injury as would be suggested to a reasonable person in view of the surrounding circumstances." The instructions drew a proper distinction between conditions which are open and obvious and those that are concealed or hidden. It is not open to question that a pond of water has a natural attraction for children, but it cannot be successfully asserted that the doctrine of attractive nuisance is applicable to the ordinary pond or body of water,

whether natural or artificial, which is distinctly open to the view of those who encounter it. Upon the other hand, an accumulation of water may be maintained under such conditions as to come within a recognized exception to the rule which bars recovery of damages by trespassers. Volume 2, Restatement, Torts, paragraph 339, reads: "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein. . . . Comment on Clause (c): [p. 925.] A possessor of land is, under the statement made in Comment a, under a duty to keep so much of his land as he knows to be subject to the trespasses of young children, free from artificial conditions which involve an unreasonable risk of death or serious bodily harm to them. This does not require him to keep his land free from conditions which even young children are likely to observe and the full extent of the risk involved in which they are likely to realize. The purpose of the duty is to protect children from dangers which they are unlikely to appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known danger. . . ." It was held in *Blaylock* v. *Jensen*, 44 Cal.App.2d 850 [113 P.2d 256], that liability existed for maintenance of a sump in the vicinity of a highway, where the surface of the sump had the appearance of earth and a 13-year-old girl became mired in the oil and tar while endeavoring to rescue her dog therefrom. The court said (p. 852): "The conclusion of the trial court may be sustained under the general rule that a landowner may not construct or maintain a trap or pitfall into which he knows or has reason to believe that a trespasser will probably fall. The liability of the owner in such cases depends upon the circumstances surrounding the maintenance of the 'trap,' the extent of the danger involved and the comparative ease or difficulty of pre-

venting the danger without disturbing or impairing the usefulness of the thing which is claimed to be a trap or pitfall.''

▮  We have examined six photographs of the excavation which were introduced as exhibits. They were taken from different angles and no one of them gives a complete picture of the appearance of the hole when viewed from different directions. The child's body was found at the south end of the pool about midway between the two sides. We have selected for publication the photograph which best represents the appearance of the excavation, viewed from the south.

It is obvious that the picture shows more of the excavation than would be within the sight of a 4-year-old boy. The condition shown is clearly not one which could be said, as a matter of law, to be either obvious or hidden. Whether the condition was one which defendant should have known involved an unreasonable risk of death or serious injury to children was a question of fact. It appears to us that there was real and apparent danger that a young child might suddenly come upon the pool and fall into it without discovering it in time to avoid it. The water was muddy and by no means as clearly within the view of a small child as surface water would have been. One may see in examining the picture that the excavation might prove to be a pitfall for a child approaching it from any direction, especially if running. The picture speaks for itself. We hold that the condition could reasonably be regarded as one which involved an unreasonable risk of death or serious bodily harm to children.

We may note here that defendant's instruction omitted the element of its knowledge, actual or constructive, of the extent of the danger, but this omission is one of which it does not, and could not well complain. However, defendant did take some precautions to prevent accidents, as already described. It was a question for the jury whether they met the requirements of ordinary care. It may be remarked however that the rope that hung almost to the ground would have furnished little protection to a child who had run across the street and might in fact have tripped a running child approaching from some other direction.

We do not give approval to either of the instructions last quoted. They do not, as we have said, include the element of knowledge of unreasonable risk of death or serious bodily harm. This is a proper element where death or serious bodily harm has occurred. They omit also the element of knowledge, actual or constructive, whether children were likely to trespass on the particular locality. Defendant's instruction refers to a ''hidden or concealed contrivance'' which did not constitute a ''trap,'' without defining those terms. The proper test was whether the condition created an unreasonable risk of death or serious bodily harm to children. Instructions in accordance with the rules of the Restatement would have been appropriate and sufficient. Those rules are not in conflict with the doctrine that a pond or pool of water is not *per se* an attractive

nuisance from which the landowner must, by fence or other devices, endeavor to exclude trespassing children.

The order granting a new trial is reversed.

Wood, J., and Vallée, J., concurred.

A petition for a rehearing was denied July 5, 1949, and respondent's petition for a hearing by the Supreme Court was denied August 11, 1949. Edmonds, J., and Spence, J., voted for a hearing.