[S. F. No. 19697.   In Bank.   June 28, 1957.]

. HELEN KNIGHT, Appellant, v. KAISER COMPANY (a Corporation), Respondent.

Charles O. Morgan, Jr., for Appellant.

Frederick M. Van Sicklen and James C. Calkins for Respondent.

McCOMB, J.—From a judgment predicated upon the sustaining of defendant's demurrer to plaintiff's third amended complaint without leave to amend in an action to recover damages for the death of plaintiff's son, plaintiff appeals.

The amended complaint, in substance, alleged that plaintiff was the natural mother of decedent, Johnny William Bass, Jr., 10 years of age; that defendant owned and maintained premises in Stockton on which it had placed or caused to be placed large piles of sand and gravel and, adjacent thereto, a large conveyor belt; that no fences, guards or railings were placed around these sand and gravel piles or a portion of the conveyor belt; that a road or pathway was close to these objects and children were in the habit of playing upon the sand and gravel piles and the conveyor belt; that defendant knew or should have known the conditions existing involved an unreasonable risk of death or serious bodily harm to children playing on the sand and gravel piles; and that

on August 20, 1953, plaintiff's son, while playing upon the premises and digging in one of the sand piles, was asphyxiated when it collapsed upon him.[1]

[1] The material parts of the amended complaint are as follows: "IV. That at all times herein mentioned the defendants owned, maintained, operated and controlled those certain premises located in the City of Stockton, County of San Joaquin, State of California, and more commonly known and designated as the 1100 Block, North Union Street, Stockton, California.

"V. That prior to and on or about the 20th day of August, 1953 the defendants had placed or caused to be placed and had maintained or caused to be maintained large sand and gravel piles and a large conveyor belt on the said 1100 Block, North Union Street, all of which were adjacent to each other, and no fences, guards or railings were placed around said sand or gravel piles or around a portion of the said conveyor belt; that in addition thereto there was a road, or pathway, proceeding along side the said sand and gravel piles and the said conveyor. That children of tender age were in the habit of being upon and playing upon the said premises and the said sand and gravel piles and conveyor belt, and by the ordinary predilections and impulses of normal children were attracted to and induced to come and to be upon and to play upon the said premises, said sand and gravel piles and conveyor belt; all of which was well known to the defendants, its servants, agents and employees, or by the exercise of reasonable care on their part would have been known to them. That the defendants knew and realized, or should have known and realized, that the said sand piles, gravel piles and conveyor involved an unreasonable risk of death or serious bodily harm to children playing on the same as aforesaid in that the children could be injured or killed from falling from the same, from the same falling upon them and in other manners and ways.

"That said children because of their youth were unable to and did not discover the condition or realize the risk involved in intermeddling in said condition or coming within the area made dangerous by the same. That a fence, guard or railing would have prevented said children from coming upon and being upon said premises and condition and from intermeddling in same.

"VI. That on or about the 20th day of August, 1953, at or about 7:20 P. M. of said day, the said Johnny William Bass, Jr., having been attracted to and induced to come and be upon and to play upon the said premises, the said sand and gravel piles and the said conveyor belt as aforesaid, was playing upon the same, and being of the age of ten (10) years and being of tender and immature years and by reason of his age and immaturity, being unable to perceive or appreciate the danger confronting him and without fault on his part was situated and playing as aforesaid. That at said time and place the defendants, and each of them, did carelessly and negligently maintain, operate and control the said premises owned by the defendants and known and designated as the 1100 Block of North Union Street, in that the said defendants negligently and carelessly failed to place any fences, guards or railings or other means of excluding small children from the area around said sand or gravel piles or around a portion of the said conveyor belt. That by reason of the negligence and carelessness of the defendants, and each of them, as aforesaid, and as a proximate result thereof, the said Johnny William Bass, Jr., while playing and digging on and in the same piles was asphyxiated, resulting in his death, when one of said sand piles collapsed upon him while he was playing and digging on or in the same."

Plaintiff contends that the facts alleged in the complaint as amended state a cause of action within the "attractive nuisance" doctrine. This contention is untenable.

Where the facts are undisputed, as in the instant case, it is a question of law whether or not the facts alleged fall within the scope of the "attractive nuisance" doctrine. (*Nicolosi* v. *Clark,* 169 Cal. 746, 747 et seq. [147 P. 971, L.R.A. 1915F 638] ; *Hernandez* v. *Santiago Orange Growers Assn.,* 110 Cal.App. 229, 236 [4] [293 P. 875] ; *cf. Loftus* v. *Dehail,* 133 Cal. 214, 218 [65 P. 379].)

Applying this rule to the admitted facts in the present case, it is conceded that defendant maintained upon its premises large sand and gravel piles and a large conveyor belt; that decedent while playing and digging in one of the sand piles was asphyxiated when it collapsed upon him.

It is the general rule that where a person goes upon the premises of another without invitation, as a bare licensee, and the owner passively acquiesces in his presence, if any injury is sustained by the licensee by reason of a mere defect in the premises the owner is not liable for negligence, for the licensee has assumed the risk himself. The owner of property does not assume any duty to one who is on his premises by permission only and as a mere licensee, except for wanton or willful injury inflicted upon the licensee while on the premises. (*Means* v. *Southern Calif. Ry. Co.* 144 Cal. 473, 479 [77 P. 1001, 1 Ann.Cas. 206] ; *Ward* v. *Oakley Co.,* 125 Cal.App.2d 840, 844 [1] [271 P.2d 536] ; *Fisher* v. *General Petr. Corp.,* 123 Cal.App.2d 770, 777 [5] [267 P.2d 841] ; *Koppelman* v. *Ambassador Hotel Co.,* 35 Cal.App.2d 537, 540 [2] [96 P.2d 196] ; *Herzog* v. *Hemphill,* 7 Cal.App. 116, 118 [93 P. 899].)

The law is also established that in the absence of circumstances which bring a case under the "attractive nuisance" doctrine, an owner of land owes no other duty to a child trespassing on his premises than he owes to an adult trespasser. (*Peters* v. *Bowman,* 115 Cal. 345, 349 [47 P. 113, 598, 56 Am.St.Rep. 106].)

To the general rule there is this exception: If an owner of land maintains thereon what is commonly called an "attractive nuisance," the owner is liable for injuries resulting to a trespassing child. (See Prosser on Torts (2d ed. 1955), pp. 438 et seq.; *Sanchez* v. *East Contra Costa Irr. Co.,* 205 Cal. 515, 518 [2] [271 P. 1060].)

In view of the foregoing rules and the facts alleged

in the complaint, this question is presented: *Does a sand pile constitute an "attractive nuisance," i.e., a fact which places liability upon the owner of property for injuries to a trespassing child?*[2]

This question must be answered in the negative. ▉ It is settled that a body of water, natural or artificial, does not constitute an "attractive nuisance" that will subject the owner to liability for trespassing children who are attracted thereto and are drowned. (*Peters* v. *Bowman, supra,* pp. 347 et seq.; *Ward* v. *Oakley Co., supra,* p. 845 [2]; *Demmer* v. *City of Eureka,* 78 Cal.App.2d 708, 710 [1] [178 P.2d 472].)

As far as attractiveness to children is concerned, there is no significant difference between a body of water and a sand pile. Pools of water and sand piles duplicate the work of nature and are not uncommon. In fact, a pool of water is far more dangerous than a sand pile, which in and of itself is not dangerous. The dangers connected with and inherent in a sand pile are obvious to everyone, even to a child old enough to be permitted by its parents to play unattended.
▉ Sand piles may be attractive to children, but they are also of a common and ordinary nature and are found in numerous places, quite frequently in the child's own backyard. It is common for children to play in sand piles and to dig holes and make excavations in them. They are early instructed by their parents as to the danger of cave-ins. Hence, the owner of private property who maintains thereon a sand pile that merely duplicates the work of nature and to which no new dangers have been added should not be liable to a trespassing child for injuries under the "attractive nuisance" doctrine.

In Restatement of the Law of Torts, volume 2, section 339, page 922, it is said that the duty of the possessor of land "does not extend to those conditions the existence of which is obvious even to children and the risk of which is fully realized by them. This limitation of the possessor's liability to conditions dangerous to children, because of their inability to appreciate their surroundings or to realize the risk involved therein, frees the possessor of land from the danger of liability to which he would otherwise be subjected by maintaining on the land the normal, necessary and usual implements which are essential to its normal use but which reckless children can use to their harm in a spirit of bravado or to

[2]See Prosser on Torts (2d ed. 1955), *supra.*

gratify some other childish desire and with as full a perception of the risks which they are running as though they were adults.'' (*Cf.* 28 A.L.R.2d (1953), § 4, p. 200.)

In *Anderson* v. *Reith-Riley Const. Co.*, 112 Ind.App. 170 [44 N.E.2d 184], defendant removed a large amount of sand from its property, leaving a hole 100 feet long, 50 feet wide and 10 feet deep, with perpendicular walls. Plaintiff's son, nine years of age, was attracted to the hole, where he excavated below the surface and was killed in a cave-in which followed. The court held that defendant was not liable under the ''attractive nuisance'' doctrine, saying at page 185: ''Nature has created streams, lakes and pools which attract children. Lurking in their waters is always the danger of drowning. Against this danger children are early instructed so that they are sufficiently presumed to know the danger that if the owner of private property creates an artificial pool on his own property, merely duplicating the work of nature without adding any new danger, and a child, without invitation, ventures on the private property, enters the pool and is drowned, the owner is not liable because of having created an 'attractive nuisance.'

''Nature has created cliffs and embankments which attract children. And here again is always the danger of falling over the cliffs or down the embankments. Against these dangers children are early instructed so that they are sufficiently presumed to know the danger that if the owner of private property by excavating for a basement on his own property, thereby creates an artificial cliff, and a child, without invitation, ventures on the private property and falls into the excavation, the owner is not liable because of having created an 'attractive nuisance.'

''Another common danger in cliffs and embankments is that of cave-ins from excavation below the surface. And it is common for children in play to make such excavations in the sides of cliffs and embankments for the purpose of creating caves, tunnels, etc. So they are early instructed as to the danger of cave-ins and are sufficiently presumed to know the danger that if the owner of private property by excavating on his own property, creates an artificial cliff or embankment, merely duplicating the work of nature without adding any new dangers, and a child, without invitation, ventures on the private property, excavates below the surface and is injured or killed by a resultant cave-in, the owner is not liable because of having created an 'attractive nuisance.' Nor does the rule

change with the varying texture of the earth. The danger is the same danger, real and obvious, with only the percentage of probability of the occurrence increased or decreased with the earth's fineness or firmness.

"The essence of the rule that the doctrine of attractive nuisance does not apply to cases where the danger is one which is obvious and common to nature, against which children are presumed to have received early instruction, was recognized by our Supreme Court in the case of *City of Evansville* v. *Blue* (1937), 212 Ind. 130 [8 N.E.2d 224, 229]. There a boy of 11 was drowned in a municipal swimming pool. Justice Fansler speaking for the court said:

" 'Healthy boys of eleven years and younger must be deemed to know the perils of deep water, and it must be recognized that it is in the nature of boys to venture where it is dangerous. But it is none the less negligent for one. who is not a good swimmer to venture into deep water, and, ordinarily, boys no more than adults may voluntarily and negligently put themselves in a position of known danger and charge others with responsibility for protecting them against their own voluntary acts.' "

In *Puckett* v. *City of Louisville*, 273 Ky. 349 [116 S.W.2d 627], plaintiff instituted an action against defendant city for injuries sustained by plaintiff's 11-year-old child, who had gone upon defendant's lot containing a hole about four feet deep. The child undermined the embankment with a spoon, causing it to cave in and injure her. The court held that defendant was not liable under the "attractive nuisance" doctrine.

In *Zagar* v. *Union Pac. R. Co.*, 107 Kan. 240 [214 P. 107], it was held that defendant was not liable for injuries to a boy 13½ years of age who was injured as the result of earth falling upon him from a cave dug on defendant's land by other boys. The "attractive nuisance" doctrine was held not applicable to these facts. (See p. 109.)

It is thus evident that the sand pile did not constitute an "attractive nuisance." ▮ This conclusion is in accord with the generally accepted rule,—to restrict and limit, rather than to extend, the doctrine of "attractive nuisance." It is a doctrine to be applied cautiously and only when the facts come strictly and fully within the rule. (See *Lake* v. *Ferrer*, 139 Cal.App.2d 114, 117 [3] [293 P.2d 104]; 65 C.J.S. (1950), § 29(14), p. 479.)

▮ Finally, it is to be noted that if it is conceded that

the conveyor belt mentioned in the pleading might constitute an "attractive nuisance," there is no allegation that it caused or contributed to decedent's death. There is a total absence of an allegation of a causal connection between the conveyor belt and his unfortunate death. Under these circumstances, the maintenance of the conveyor belt does not bring the case under the "attractive nuisance" doctrine. (*Ward* v. *Oakley Co.*, *supra*, p. 846 [5].)

The judgment is affirmed.

Shenk, J., Schauer, J., and Spence, J., concurred.

TRAYNOR, J.—I dissent.

The Civil Code, section 1714, provides: "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself." Nevertheless, the cases are replete with statements that an occupier of real property owes no such general duty of care to trespassers and bare licensees. With respect to adults we need not pause to determine how many of such statements constitute no more than a determination by the court that the defendant was not negligent at all or that the plaintiff assumed the risk or was guilty of contributory negligence as a matter of law. Clearly the fact that the plaintiff is a trespasser or a bare licensee is relevant to the question what precautions the reasonable man would take to protect him. In many cases there may be no reason to foresee trespassing, and a reasonable man ordinarily may be entitled to assume that those entering without right or by mere permission will not expect special precautions to be taken for their benefit and will accordingly exercise greater care for their own safety. Moreover, the rules dealing with the duty of land occupiers to the various classes of entrants on the land make clear that in this area courts have frequently exercised their power to establish specific standards of negligence instead of leaving the matter under more general instructions to the jury. It cannot be denied, however, that in the case of adult trespassers and licensees the operation of no-duty rules has in many instances resulted in immunity for conduct that unreasonably endangered the plaintiff and was therefore negligent toward him. The dilemma of choosing between such cases

and the rule set forth in section 1714 is not now before us. In the case of trespassing children a review of the better considered cases convinces me that it does not exist.

In *Barrett* v. *Southern Pac. Co.*, 91 Cal. 296 [27 P. 666, 25 Am.St.Rep. 186], this court followed the Supreme Court of the United States in *Sioux City & Pac. R. R. Co.* v. *Stout*, 17 Wall (U.S.) 657 [21 L.Ed. 745], by solving the problem of the land occupier's liability to trespassing children for dangerous conditions maintained on the premises in terms of ordinary negligence principles. It pointed out that it could not recognize a rule that no duty was owed to trespassing children without departing from well-settled principles. ''It is a maxim of the law that one must so use and enjoy his property as to interfere with the comfort and safety of others as little as possible, consistently with its proper use. This rule, which only imposes a just restriction upon the owner of property, seems not to have been given due consideration in the case referred to. [*Frost* v. *Eastern R. R. Co.*, 64 N.H. 220 [9 A. 790], invoked by defendant.] But this principle as a standard of conduct is of universal application, and the failure to observe it is, in respect to those who have a right to invoke its protection, a breach of. duty, and in a legal sense, constitutes negligence. Whether, in any given case, there has been such negligence upon the part of the owner of property, in the maintenance thereon of dangerous machinery, is a question of fact dependent upon the situation of the property and the attendant circumstances, because upon such facts will depend the degree of care which prudence would suggest as reasonably necessary to guard others against injury therefrom; 'for negligence in a legal sense is no more than this: the failure to observe, for the protection of the interests of another person, that degree of care, precaution, and vigilance which the circumstances justly demand, whereby such other person suffers injury.' (Cooley on Torts, 630.) The question of defendant's negligence in this case was a matter to be decided by the jury, in view of all the evidence, and with reference to this general principle as to the duty of the defendant. If defendant ought reasonably to have anticipated that leaving this turn-table unguarded and exposed, an injury such as plaintiff suffered was likely to occur, then it must be held to have anticipated it, and was guilty of negligence in thus maintaining it in its exposed position. It is no answer to this to say that the child was a trespasser, and if it had not intermeddled with defendant's property it

would not have been hurt, and that the law imposes no duty upon the defendant to make its premises a safe playing-ground for children. In the forum of law, as well as of common sense, a child of immature years is expected to exercise only such care and self-restraint as belongs to childhood, and a reasonable man must be presumed to know this, and required to govern his actions accordingly. It is a matter of common experience that children of tender years are guided in their actions by childish instincts, and are lacking in that discretion which is ordinarily sufficient to enable those of more mature years to appreciate and avoid danger, and in proportion to this lack of judgment on their part, the care which must be observed toward them by others is increased." (91 Cal. at 301-303.)

To recognize such a duty of care toward trespassing children does not impose an unreasonable burden on the defendant, and "it must be kept in mind that it requires nothing of the owner that a man of ordinary care and prudence would not do of his own volition, under like circumstances. Such a man would not willingly take up unreasonable burdens, nor vex himself with intolerable restrictions." (*Chicago, B. & Q. R. Co.* v. *Krayenbuhl*, 65 Neb. 89 [91 N.W. 880, 882].) "The owner of a thing dangerous and attractive to children is not always and universally liable for an injury to a child tempted by the attraction. His liability bears a relation to the character of the thing, whether natural and common, or artificial and uncommon, to the comparative ease or difficulty of preventing the danger without destroying or impairing the usefulness of the thing, and, in short, *to the reasonableness and propriety of his own conduct, in view of all surrounding circumstances and conditions.* As to common dangers existing in the order of nature, it is the duty of parents to guard and warn their children, and, failing to do so, they should not expect to hold others responsible for their own want of care. But, with respect to dangers specially created by the act of the owner, novel in character, attractive and dangerous to children, easily guarded and rendered safe, the rule is, as it ought to be, different; and such is the rule of the turntable cases, of the lumber-pile cases, and others of similar character. But the owner of a thing dangerous and attractive to children is not always culpable, and therefore is not always liable for an injury to a child drawn into danger by the attraction. It is necessary to discriminate between the cases in which culpability does and does not exist." (Beatty, C. J., on denial of

rehearing in *Peters* v. *Bowman,* 115 Cal. 345, 356 [47 P. 113, 598, 58 Am.St.Rep. 106]. Italics added.)

As Chief Justice Beatty stated such culpability turns on "the reasonableness and propriety of" the defendant's "conduct, in view of all surrounding circumstances and conditions," or, in other words, it is determined by applying familiar negligence standards. (Accord: *Gimmestad* v. *Rose Bros. Co.,* 194 Minn. 531 [261 N.W. 194, 196]; *Wolfe* v. *Rehbein,* 123 Conn. 110 [193 A. 608, 609-610]; *Foster* v. *Lusk,* 129 Ark. 1 [194 S.W. 855, 856]; *Kahn* v. *James Burton Co.,* 51 Ill. 614 [126 N.E.2d 836, 841-842].) Section 339 of the Restatement of Torts has defined these standards by stating four conditions that must be satisfied to impose liability on a possessor of land for injury to trespassing children caused by a structure or other artificial condition on the land. Liability exists if "(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein." This section was cited with approval in *Melendez* v. *City of Los Angeles,* 8 Cal.2d 741 [68 P.2d 971], and has frequently been held to be in accord with the law of this state. (*Woods* v. *City & County of San Francisco,* 148 Cal.App.2d 958, 962-963 [307 P.2d 698]; *Edler* v. *Sepulveda Park Apts.,* 141 Cal.App.2d 675, 680 [297 P.2d 508]; *Lopez* v. *Capitol Co.,* 141 Cal.App.2d 60, 66 [296 P.2d 63]; *Marino* v. *Valenti,* 118 Cal.App.2d 830, 842 [259 P.2d 84]; *Long* v. *Standard Oil Co.,* 92 Cal.App.2d 455, 464 [207 P.2d 837].)

In the present case the allegations of plaintiff's complaint satisfy the foregoing requirements. It is alleged that defendant maintained large sand and gravel piles and a large conveyor belt on its property adjacent to a public street. "[C]hildren of tender age were in the habit of . . . playing upon . . . the said sand and gravel piles and conveyor belt," which was known or in the exercise of reasonable care should have been known to defendant. Defendant "knew and realized, or should have known or realized, that the said sand

piles, gravel piles and conveyor involved an unreasonable risk of death or serious bodily harm to children playing on the same as aforesaid in that the children could be injured or killed from falling from the same, from the same falling upon them and in other manners and ways. . . . [S]aid children because of their youth were unable to and did not discover the condition or realize the risk involved in intermeddling in said condition or coming within the area made dangerous by the same." No fences, guards, or railings were "placed around said sand or gravel piles or around a portion of the said conveyor belt," but "a fence guard or railing would have prevented said children from coming upon and being upon said premises and condition and from intermeddling in same." Plaintiff's son, "having been attracted to and induced to come upon and be upon and to play upon the said premises, the said sand and gravel piles and the said conveyor belt as aforesaid, was playing upon the same, and being of the age of ten (10) years and being of tender and immature years and by reason of his age and immaturity, being unable to perceive or appreciate the danger confronting him and without fault on his part was situated and playing as aforesaid." As a proximate result of defendant's negligent failure to place any fences, guards or railings or other means of excluding small children from the area, plaintiff's son "while playing and digging on and in the . . . piles was asphyxiated, resulting in his death, when one of said sand piles collapsed upon him while he was playing and digging on or in the same."

Despite the apparent sufficiency of these allegations, the majority opinion holds that the complaint does not state a cause of action on the ground that a sand pile does not constitute an attractive nuisance. This holding necessarily either departs from the general principles governing liability to trespassing children by adopting a special sand-pile rule, or is based on the tacit taking of judicial notice of facts with respect to children and sand piles contrary to those alleged in the complaint. It cannot be justified on either ground. There are no established precedents in this state dealing with sand piles, as there are with respect to bodies of water, that might, under the doctrine of stare decisis, justify adhering to a rigid rule without regard to the facts of the particular case. Precedent-wise we are free to follow the general principles governing liability to trespassing children. In purporting to do so, the majority opinion states that "sand piles duplicate

the work of nature and are not uncommon,'' and that ''The dangers connected with and inherent in a sand pile are obvious to everyone, even to a child old enough to be permitted by its parents to play unattended.'' There is no basis, however, for concluding that every sand pile necessarily duplicates the work of nature or holding as a matter of law that no defendant should reasonably foresee that the dangers connected with and inherent in its sand pile are not obvious to children old enough to be permitted to play unattended. Although *Anderson* v. *Reith-Riley Const. Co.*, 112 Ind.App. 170 [44 N.E.2d 184], supports the majority's position, the other cases cited in the majority opinion may be explained on their particular facts. Moreover, authority contrary to the Anderson case is not lacking. (*Hawley* v. *City of Atlantic*, 92 Iowa 172 [60 N.W. 519, 520]; *Baxter* v. *Park*, 48 S.D. 506 [205 N.W. 75, 76]; see *Holmberg* v. *City of Chicago*, 244 Ill.App. 505, 510-512; 28 A.L.R.2d 195, 198.)

Whether the maintenance of a sand pile can give rise to liability for harm to trespassing children must necessarily turn on the facts of the particular case. Children accustomed to playing in sand piles in their own yards may be totally unfamiliar with the hazards of a large pile maintained for industrial purposes. The very harmlessness of the familiar small pile may lull them into a sense of security. Nor are all children reared in such proximity to natural bluffs, cliffs, caves, and large sand dunes that they may be presumed to be familiar with them or to have been warned of their characteristics by their parents. Thus even if it could be assumed that the sand piles in this case duplicated natural sand piles, we could not judicially notice that plaintiff's child should necessarily have been aware of their hazards. Dean Prosser has pointed out that many ''courts have said that the doctrine does not apply to common conditions, or to natural conditions of the land, or that it is limited to latent dangers, or to highly dangerous conditions, or to special and unusual conditions of modern industry; but all such statements appear to be made with reference to the particular case, and to be directed at nothing more than the existence of a recognizable and unreasonable risk of harm to children.'' (Prosser on Torts, 2d ed., § 76, p. 443.) Professors Harper and James state: ''In addition to the probability of trespass, the dangerous condition of the premises must be produced by man, and either created or maintained by the occupier. This requirement stems from the law's reluctance to impose purely

affirmative obligations on a man. It is sometimes said that man-made conditions which merely reproduce natural ones stand on the same footing. But if there is to be exemption here it must obviously rest on a different basis. That basis may often be found in the fact that children are likely to appreciate the risks of natural dangers, such as water, fire, or high places, so that these conditions are not highly dangerous to them. But this is not always the case. Some natural conditions have more concealed danger than a turntable, and if a landowner reproduces such a 'natural trap,' liability should not be excluded. Given affirmative arrangement of the premises, the touchstone of liability should be unreasonable probability of harm. All other criteria should be used as guides only, and not erected into rigid rules.'' (2 Harper and James, Law of Torts, § 27.5, pp. 1452-1453.)

The evil of creating rigid rules is demonstrated by some of the California cases dealing with bodies of water. Since ordinarily it may be presumed that children are aware of the dangers of drowning and since frequently the burden of adequately protecting children from that risk is out of proportion to it, usually the maintenance of a body of water should not give rise to liability. (See *Peters* v. *Bowman,* 115 Cal. 345 [47 P. 113, 598, 58 Am.St.Rep. 106]; *Melendez* v. *City of Los Angeles,* 8 Cal.2d 741 [68 P.2d 971]; *Beeson* v. *City of Los Angeles,* 115 Cal.App. 122 [300 P. 993]; *King* v. *Simons Brick Co.,* 52 Cal.App.2d 586 [126 P.2d 627]; *Demmer* v. *City of Eureka,* 78 Cal.App.2d 708 [178 P.2d 472]; *Polk* v. *Laurel Hill Cemetery Assn.,* 37 Cal.App. 624 [174 P. 414]; *Betts* v. *City & County of San Francisco,* 108 Cal.App.2d 701 [239 P.2d 456]; *Ward* v. *Oakley Co.,* 125 Cal.App.2d 840 [271 P.2d 536]; *Reardon* v. *Spring Valley Water Co.,* 68 Cal. App. 13 [228 P. 406].) Blindly, however, the rule appropriate for the usual case has been extended to the unusual case unless there was something abnormal about the body of water itself. (See *Sanchez* v. *East Contra Costa Irr. Co.,* 205 Cal. 515 [271 P. 1060]; *Long* v. *Standard Oil Co., supra,* 92 Cal.App.2d 455.) Thus recovery has been denied on the pleadings for the death of very young children who could not be presumed to appreciate the danger despite allegations sufficient to justify recovery under general principles and where the facts alleged did not indicate that the burden of protecting such children outweighed the risk to them. (*Wilford* v. *Little,* 144 Cal.App.2d 477 [301 P.2d 282]; *Lake* v. *Ferrer,* 139 Cal.App.2d 114 [293 P.2d 104].) In nonwater

cases, on the other hand, the error of rigid categorization has been recognized and avoided. (*Woods* v. *City & County of San Francisco, supra,* 148 Cal.App.2d 958, 963-965 [307 P.2d 698]; *Morse* v. *Douglas,* 107 Cal.App. 196, 200 [290 P. 465]; *Faylor* v. *Great Eastern Quicksilver Min. Co.,* 45 Cal.App. 194, 204 [187 P. 101].) This conflict should be resolved by disapproving the former cases. In any event the error of those cases should not be extended. As stated in the Faylor case, ''while matching cases is an interesting mental recreation, it is not by matching cases, but by the correct application of sound legal principles, that a case such as this is best determined. . . .'' (45 Cal.App. at 204.) ''The naming or labeling of a certain set of facts as being an 'attractive nuisance' case or a 'turntable' case has often led to undesirable conclusions. The inclination is then to find a *stare decisis* pigeonhole or category. The difficulty in such procedure is that too often the result of such a search is the reaching of irreconcilable conclusions. . . . [T]he only proper basis for decision in such cases dealing with personal injuries to children are the customary rules of ordinary negligence cases.'' (*Kahn* v. *James Burton Co., supra,* 51 Ill. 614 [126 N.E. 2d 836, 841].)

I would reverse the judgment.

Gibson, C. J., and Carter, J., concurred.

Appellant's petition for a rehearing was denied July 24, 1957. Gibson, C. J., Carter, J., and Traynor, J., were of the opinion that the petition should be granted.