[Civ. No. 6478.  Second Appellate District, Division One.—January 22, 1932.]

HARRY R. BROWN, Appellant, v. SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation), Respondent.

McGee & Sumner and William A. Sumner for Appellant.

Roy V. Reppy and E. W. Cunningham for Respondent.

HOUSER, J.—On rehearing of the appeal herein this court adheres to that part of the opinion heretofore delivered by it which is hereinafter quoted; and in addition thereto, it expresses its opinion with reference to other points not originally passed upon by this court, to wit:

"This is an appeal from a judgment of dismissal after order sustaining the defendant's demurrer to plaintiff's second amended complaint, which judgment was entered upon refusal of plaintiff to file a third amended complaint.

"The minor son of the plaintiff, who is alleged to have been of the age of twelve years and a normal, healthy, active boy of the ordinary capacity and understanding for that age, was injured by a certain high tension or high voltage power line, alleged to have carried an electric current of between 600 and 10,000 volts, which injury resulted in his death. It is alleged that this power line was erected and maintained in Los Angeles county, and that the defendant caused wooden poles of a height of about 60 feet to be erected along the northerly curb line of the public street along which the power line was run, said poles carrying heavy uninsulated copper wires attached to wooden crossarms. The pole where the son of the plaintiff is alleged to have been injured was located in a thickly settled community, in which there resided a large number of boys of about the age of decedent, which boys were accustomed to congregate and play in and around that vicinity. The

theory of the complaint apparently was that the erection of such a pole and the fact that the pole contained iron spikes placed alternately on each side, spaced about 18 inches apart, to form steps or a ladder by which to climb the pole, constituted a nuisance on the part of defendant and was an implied invitation to a child to climb the same.

"It was alleged that the lowest step was six feet off the ground on the pole in question and that the steps reached to the top of the pole or to the cross-arms at or near the top thereof. It was also alleged that the average height at which the spikes or steps started on other poles in said power line was about eight feet instead of six feet as on the particular pole in question. It was further alleged that there was no sign or warning of danger posted upon the pole to indicate that it was dangerous or that it was a high voltage power line. It was also alleged that Act 1350 (Henning's) General Laws of California, as amended by the statutes of 1915, page 1058, provided that in cases where more than 600 volts of electricity are carried on any wire or cable, the cross-arms, or such other appliances as may be used in lieu thereof, to which such wire or cable is attached, must be kept at all times painted a bright yellow color, or on such cross-arms or other appliances used in lieu thereof, shall be placed signs providing in white letters on a green back-ground, not less than three inches in height, the words 'high voltage' on the face and back of each cross-arm. It was further alleged that the defendant carelessly and negligently failed to fence off or guard said pole and failed to place any sign or other warning of danger on or near said pole; that said defendant carelessly and negligently failed to insulate the wires supported by said pole, and carelessly and negligently conveyed a high-voltage current of electricity through uninsulated wires; failed to comply with the statutory requirements in relation to painting the cross-arms on said pole; failed to paint said cross-arms a bright yellow, and failed to paint on said cross-arms in letters three inches high the words 'high voltage' or any words.

"It was also alleged in the complaint that the death of the said Fred C. Brown was proximately caused by the negligence of the defendant as alleged in the complaint, and

that he was killed by the electric current from the pole passing through his body.

"The demurrer having been sustained, the plaintiff was given ten days within which to amend and, having refused to amend within that time, the court thereupon, upon motion of the attorneys for defendant, dismissed the action and ordered judgment .that defendant have and recover its costs.

"It will be observed that from the allegations con-' tained in the complaint the particular acts of negligence charged to the defendant are that to the knowledge of the defendant the pole in question was located on public property in the immediate neighborhood of a children's playground where children were accustomed to congregate and play; that the climbing spikes on said pole were within easy reach of a child of the age of twelve years; that the said pole was neither fenced nor otherwise guarded in any way to prevent easy or unobstructed access thereto; that the electric wires of the defendant at the top of said pole were uninsulated and 'contained a high voltage of electricity'; and that in violation of statutory requirements the defendant failed to paint the cross-arms of said pole a bright yellow, or to paint thereon in letters 'three inches high' the words 'high voltage'.

"The proper application of the term negligence to the conduct of individuals depends upon 'the situation and knowledge of the parties and all the attendant circumstances'. (19 Cal. Jur. 549.) Ordinarily the question of determining whether the acts of a defendant were negligent is one which rests with the jury; yet where, as on demurrer to the complaint, the facts are undisputed or admitted and are such that but one inference may be drawn therefrom, although it is generally ruled that as a matter of law the trial court is authorized to declare that negligence does not exist (19 Cal. Jur. 725), nevertheless, even in such cases, it has been declared that the ruling by the court can never be a 'question of pure law. The real decision of the question by the court is a decision of fact', (*Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237, 240 [116 Pac. 513, 515]) ; and more particularly, (with reference to the facts herein), it is for the jury to determine whether an instrumentality is attractive to children and whether or

not the owner is obligated to guard against injuries to trespassing children. (19 Cal. Jur. 627.)

"In the premises, the duty of this court is primarily to determine whether the legally admitted facts will admit of any inference other than that the defendant was guilty of no negligence; in other words, are the facts such that from a consideration of them by no possibility might reasonable men differ in their conclusions regarding the question of negligence of the defendant?

"Considering first what may be termed the ordinary facts regarding which no particular prescribed statutory duty rested on the defendant to take care that no injury resulted to anyone, and especially to children, from the instrumentality in question,—that is to say, the location of the pole, its height and equipment, its purpose and use, and the condition in which it was maintained;—it may be said that the common observance of mankind, and particularly that of judges of courts, is that what might amount to extreme care under one condition of knowledge and one set of circumstances might be gross carelessness with different knowledge and changed circumstances. (19 Cal. Jur. 549.) To illustrate: If in a given case it appeared that on the side of a desert road, many miles from human habitation, the defendant herein had erected a pole identical in height and equipment with that here under consideration, probably no jury would have been justified in reaching a conclusion that the defendant was guilty of negligence in so maintaining the pole because some aged woman had fallen therefrom and thereby sustained serious injuries as a result of her having attempted a 'pole-sitting' feat on one of the cross-arms of such pole. But manifestly no situation analogous to that just suggested herein obtains. In addition to the alleged knowledge on the part of the defendant that the pole in question was located near a playground where children were accustomed to congregate and play, the defendant also may be presumed to have known of the possible or probable effect which a tall pole, provided with climbing spikes and with cross-arms at its top, would ordinarily have upon small children. Section 1960 of the Code of Civil Procedure contains the declaration of law that 'an inference must be founded on a fact legally proved; and, on such a deduction from that fact as is warranted by a

consideration of the usual propensities or passions of men, . . . '. It would seem probable that one of the propensities of boys is to climb poles of the character of that here under consideration. It is a well-known fact that children, and especially boys of the approximate age of the son of plaintiff, are much inclined to climb about the joists and rafters of houses under construction, piles of lumber, trees, or anything that is capable of being climbed. For the average boy of the age of twelve years, it is about as natural for him to climb as it is for a creeping babe to attempt to walk; in fact, one of the chief anxieties of fond mothers is regarding the dangers that exist to their children from such former activities. In addition to the fact that a pole equipped as was the pole in question ordinarily would present to a small boy an attractiveness of no small proportions, when in the boy the ever-present characteristic of bravado, or the desire to 'show off' to his companions, is taken into consideration, it approaches the certainty of a mathematical demonstration that such a pole, in such a locality, and in such a situation of circumstances as are presented by the allegations of the instant complaint, ordinarily would constitute such a challenge to the agility and the daring of the boy that its consideration could not be ignored, nor its acceptance declined.

"In this state the so-called doctrine regarding 'attractive nuisance' has been adopted and consistently followed.

" ' . . . And it has been held in numerous cases to be an act of negligence to leave unguarded and exposed to the observation of little children dangerous and attractive machinery which they would naturally be tempted to go about or upon, and against the danger of which action their immature judgment opposes no warning or defense. (Citing cases.) The rule, of course, is not to be confined to turn-tables, but applies to any attractive and dangerous machinery so placed.' (*Cahill* v. *Stone & Co.*, 153 Cal. 571, 574 [19 L. R. A. (N. S.) 1094, 96 Pac. 84, 86].)

"In *Pierce* v. *United Gas & Elec. Co.*, 161 Cal. 176, 181 [118 Pac. 700], the 'attractive nuisance' consisted of a guy wire to an electric-light pole which had become detached from its ground fastenings and thereafter from its other end hung parallel to the pole. It was there held (syllabus):

" 'The so-called "attractive nuisance" doctrine imposes on one who places an attractive but dangerous contrivance in a place frequented by children, knowing or having reason to believe that children will be attracted to it and subjected to injury thereby, the duty of exercising ordinary care to prevent injury to them. Such doctrine obtains in this state, and is not confined to cases of turn-tables.'

"In that case the court further ruled (syllabus) that:

" 'It was a question for the jury whether the defendant should reasonably have anticipated that the contrivance was of such a nature that it would naturally attract children of such age to play with it, even to the extent of endeavoring to obtain electric shocks, without any realization of the extent of the danger to which they were exposing themselves, . . . '

"But in addition to what has herein been called the ordinary facts of the case, from the allegations of the complaint it appears that the defendant failed to take certain definite statutory precautions to prevent injury from resulting to any person by reason of the conditions existing in the maintenance of the pole and the use to which it was put by defendant; that is to say, the statutory requirements that the cross-arms of said pole be painted a bright yellow, or have painted thereon in letters 'three inches high' the words 'high voltage', were entirely ignored by the defendant; and that such omission constituted a proximate cause of the injury which resulted in the death of the son of plaintiff.

"In the instant case it is readily perceivable how a compliance by the defendant with the terms of the statute might have prevented the happening of the accident. In these days of free liberal education and rapid advancement of apt pupils in the work of the common-school system of this state, it is not unusual to know of boys of twelve years having concluded the grammar school education. At any rate, it would be most unusual to know of a boy of that age who was unable to read and to understand that the words 'high voltage' were intended to designate that a very great danger lurked in the vicinity of the place where such a sign was exhibited. And if the words 'high voltage' were omitted, it is not improbable that if the alternative of the statutory command had been obeyed, and in compliance

therewith the cross-arms of the pole had been painted a bright yellow, the average small boy of the neighborhood in which such a signal was displayed never would have rested until after he had learned of its full significance.

■ But aside from such speculations, it is a universal rule that where injury directly results to the plaintiff from the violation of a statute by the defendant, the negligence of the latter is conclusively presumed as a matter of law. (19 Cal. Jur. 632, and authorities there cited.)

"Considering as admitted as true the allegations of the complaint herein, it follows that said complaint was not legally subject to the objection that it failed to state a cause of action; in other words, the admitted facts readily admit of the inference that the defendant was guilty of negligence. Furthermore, aside from the feature involved in the alleged violation by the defendant of statutory requirements, the question of whether negligence actually existed, and, if so, whether it contributed· proximately to the death of the son of plaintiff, was one regarding which reasonable men might differ one from the other in their respective conclusions, and which should have been submitted to the jury for its determination."

For a review of the authorities generally, and wherein a conclusion similar to that herein is reached, see *Clark* v. *Pacific Gas & E. Co.*, 118 Cal. App. 344 [5 Pac. (2d) 58].

The demurrer which was presented to the trial court also contained certain specifications which respectively related to the alleged uncertainty, ambiguity and unintelligibility of the complaint.

■ Outside the record (but a fact which is undisputed by counsel for the respondent), it appears that none of such points on demurrer was argued in the lower court, or relied upon by said court as a basis for its order by which the demurrer was sustained. To the contrary, it is here asserted by appellant, and not denied by the respondent, that the argument in the lower court was confined exclusively to the one point of whether the complaint stated a cause of action, and that the ruling of said court was based entirely upon its conclusion with reference to said single contention by the defendant. Within the original briefs on the appeal no argument is presented by either of the parties except that which relates to the sufficiency of the complaint.

Nor was it until oral argument on the appeal before this court was had that any suggestion was made regarding the correctness of the ruling by the lower court based upon the specifications contained within the so-called special demurrer. However, since oral argument on the appeal was had in this court the respondent has contended, and now in its brief filed herein contends, in effect that, notwithstanding the failure of the lower court to consider the points presented by such special demurrer, if such demurrer was sustainable on either of the grounds therein specified, the judgment must be affirmed. Moreover, it is suggested by the respondent that since neither in his specifications of error, nor elsewhere in his brief, has appellant urged that the complaint in the action was not properly subject to either all, or at least some of the objections thereto, as specified in the special demurrer, his silence thereon amounts not only to an admission on his part that the points presented by the special demurrer were well taken, but as well constitutes a waiver of his original right to predicate error of the lower court arising from the premises. However, considering the situation in general, together with the fact that each of the litigants herein has now presented argument to this court relative to the points herein involved, it is deemed most fair to the parties, as well as in the interest of the administration of justice, that the question of whether the complaint was properly subject to the objections which were interposed thereto by means of the special demurrer be at this time considered by this court to the same extent and with the same force and effect as though such points had been originally raised by appellant by proper specifications of error in his opening brief herein on appeal from the judgment. (2 Cal. Jur. 729, 734; see, also, secs. 420 and 424 of ''Appeal and Error'', 1928 Supp. to Cal. Jur., pp. 133, 135, and authorities respectively there cited.)

By reference to the demurrer in question, it is found that the several objections thereby interposed by the defendant to the complaint are as follows:

''(a) That it cannot be determined how plaintiff's minor son reached and got upon the lowest spike on said pole''; **or**

"(b) How the spikes on said pole operated as an implied invitation to plaintiff's said minor son to climb on said pole"; or

"(c) Why or in what respect the said pole was a dangerous nuisance, attractive to plaintiff's said minor son"; or

"(d) Why or in what respect the alleged failure of defendant to paint said cross-arm yellow or to place thereon a sign bearing the words 'High Voltage' in any manner contributed to the death of plaintiff's said minor son, or made said pole attractive to plaintiff's said son."

██ Without herein setting forth in *verbatim* the language employed by plaintiff in his complaint, it may suffice to state that, in the opinion of this court, it constituted a sufficient compliance with the requirements of section 426 of the Code of Civil Procedure with reference to the sufficiency of a statement of a cause of action. More particularly relating to the criticisms of the defendant directed against the complaint by means of its special demurrer thereto, on examination thereof it plainly appears that by "ordinary and concise language" the defendant is apprised not only of the ultimate fact or facts upon which the alleged cause of action depends, but in unnecessary addition thereto the defendant is notified of many of the details or evidentiary facts which support the conclusion tending to establish the negligence of the defendant in the premises. It would seem clear that each of the several objections of the defendant to the complaint constitutes either a demand for an evidentiary fact or facts, or calls for a conclusion of either fact or law, or of both fact and law,—to neither of which by the rules of pleading is the defendant entitled. It follows that the complaint was not properly demurrable on the ground that it was either uncertain, ambiguous or unintelligible.

The judgment is reversed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 19, 1932, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 21, 1932.