[Civ. No. 20978. Second Dist., Div. Three. Sept. 26, 1955.]

CHARLENE MARIE COPFER, a Minor, etc., Respondent, v. VAUGHN C. GOLDEN et al., Appellants.

Milo S. Smith and Glenn A. Wymore for Appellants.

Dunnum & Dunnum and Wm. C. Wetherbee for Respondent.

VALLÉE, J.—This is an action for damages for personal injuries sustained by plaintiff while playing on property owned by defendant Vaughn C. Golden. Plaintiff was 6 years of age at the time of the accident. Defendant Gertrude G. Golden was formerly the wife of Vaughn; defendants Earl M. Golden and Goldie A. Golden are his father and mother. The cause was tried by the court without a jury. Findings were waived. Judgment was for plaintiff against all defendants, from which they appeal. The contention is that the evidence is insufficient to support the implied findings for plaintiff.

In 1949 Vaughn and Gertrude as joint tenants acquired a half interest, and Earl and Goldie, also as joint tenants, acquired the other half interest, in Lots 33 and 34 in Wilmington. The lots were each 150 feet deep. A building was moved onto the west 50 feet of the lots and made into an apartment house. The east 75 feet was unimproved and remained so. In May 1952 Vaughn and Gertrude separated. In October 1952 they entered into a property settlement agreement by which Gertrude agreed to convey all her interest in

Lots 33 and 34 and other property to Vaughn for a consideration of about $10,000. On October 10, 1952, all four defendants executed a deed by which they conveyed the east 75 feet of Lots 33 and 34 to Vaughn and he assumed payment of an indebtedness against it. He was in sole possession of that property from that time on. On the same day, Vaughn executed a deed by which he conveyed the west 50 feet of Lots 33 and 34 to his parents, Earl and Goldie. Gertrude was granted an interlocutory decree of divorce from Vaughn in December 1952 in which the property settlement was approved. The deeds were recorded on May 29, 1953. The east 75 feet of the lots will be referred to as the property or the property in question.

Vaughn was engaged in buying and selling old buildings. Shortly after Lots 33 and 34 were acquired in 1949, he began moving various materials, equipment, and machinery onto the property. He moved them on and off in the course of his business. Neither Earl nor Goldie had any interest in his business or in his enterprises; nor did either of them own or use any of the materials, equipment, and machinery that he kept on the property from time to time. Gertrude had no interest in his business or in his enterprises or in any of the personal property after the property settlement agreement; nor did she use any of it at any time.

The accident occurred on May 22, 1953. At that time there was on the property lumber, cement blocks and steps, an old Chevrolet, tires, wheels, pipe, trusses, a hamburger stand for resale, a trailer, a two-wheeled tubular frame stripped-down trailer, and other material. All of the equipment and material on the property had been moved there by Vaughn and was his property. The tubular part of the stripped-down trailer was a hollow half section of a 12-inch piece of tubing placed over the wheels on each side to make a runway to haul a tractor. Pieces of lumber were tied by wire across the top of the tubular frame trailer and there was some loose lumber on it. Vaughn used it to haul lumber.

Prior to the day of the accident, a number of children lived in the apartment house next to the property in question. That day there were about 13 living there. There was no place for children to play on the west 50 feet of Lots 33 and 34 on which the apartment house was located. They, including plaintiff, played on the east 75 feet and on the equipment which Vaughn kept there. He had observed them playing on the equipment from time to time and had told them to leave.

Plaintiff, with her parents and younger brothers and sisters, moved into the apartment house in February 1953. On May 22, 1953, plaintiff was severely injured while playing with three other small children on the property in question. There was evidence from which the court could have inferred that she was playing on the tubular frame trailer at the time she fell and was injured on the tubular part of the trailer.

The principles of law controlling decision of the case against Vaughn C. Golden and those controlling the decision of the case against the other defendants are not the same and they will be considered separately.

### The Case Against Vaughn C. Golden

One who maintains upon his property a condition, instrumentality, machine, or other agency which is dangerous to children of tender years by reason of their inability to appreciate the peril therein, and which is one he knows or should know and which he realizes or should realize involves an unreasonable risk of death or serious bodily harm to such children,—is under a duty to exercise reasonable care to protect them against the dangers of the agency. Thus one is negligent in maintaining an agency which he knows or reasonably should know to be dangerous to children of tender years at a place where he knows or reasonably should know such children are likely to resort or to which they are likely to be attracted by the agency unless he exercises reasonable care to guard them against danger which their youth and ignorance prevent them from appreciating. If, to the knowledge of the owner, children of tender years habitually come on his property where a dangerous condition exists to which they are exposed, the duty to exercise reasonable care for their safety arises not because of an implied invitation but because of the owner's knowledge of unconscious exposure to danger which the children do not realize. (See cases collected 34 West's Cal.Dig. p. 95, § 23(1), p. 130, § 39; Prosser on Torts, 609, § 77; 1 Shearman & Redfield on Negligence, 78, § 31; 65 C.J.S. 453, §§ 28, 29; 38 Am.Jur. 802, § 142; annos.: 36 A.L.R. 34, 39 A.L.R. 486, 45 A.L.R. 982, 53 A.L.R. 1344, 60 A.L.R. 1444, 145 A.L.R. 322, 152 A.L.R. 1263, 1268, 3 A.L.R.2d 758; 10 So.Cal.L.Rev. 214; 19 Cal.L.Rev. 86; 41 Cal.L.Rev. 138; 21 Mich.L.Rev. 495, 505.) Children of tender years have no foresight and scarcely any apprehensiveness of danger, a circumstance which those owning instrumentalities potential for harm must bear in mind; for it is every individual's duty

to use toward others such due care as the situation then and there requires. (Civ. Code, § 1714.) ██ "The known characteristics of children, including their childish propensities to intermeddle, must be taken into consideration in determining whether ordinary care for the safety of a child has been exercised under particular circumstances." (*Crane* v. *Smith*, 23 Cal.2d 288, 297 [144 P.2d 356].) ██ Of course, if adults or children of such age as to ordinarily be capable of discerning and avoiding danger are injured while trespassing upon the property of another, they may be without remedy; while under similar circumstances children of tender years would be protected.

The Restatement says: "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."[1] (Rest., Torts, § 339. See 65 C.J.S. 454, § 28.) The rule in California is substantially as stated in the Restatement. (*Long* v. *Standard Oil Co.*, 92 Cal.App.2d 455, 464-467 [207 P.2d 837]; *Marino* v. *Valenti*, 118 Cal.App. 2d 830, 842 [259 P.2d 84].)

Dean Prosser says: "Where the trespasser is a child, one important reason for the general rule of non-liability is lacking. Because of his immaturity and lack of judgment,

---

[1]The comment on clause (c) states: "A possessor of land is, under the statement made in Comment *a*, under a duty to keep so much of his land as he knows to be subject to the trespasses of young children, free from artificial conditions which involve an unreasonable risk of death or serious bodily harm to them. This does not require him to keep his land free from conditions which even young children are likely to observe and the full extent of the risk involved in which they are likely to realize. The purpose of the duty is to protect children from dangers which they are unlikely to appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known danger."

the child is incapable of understanding and appreciating all of the possible dangers which he may encounter in trespassing, and he cannot be expected to assume the risk and look out for himself. While it is true that his parents or guardians are charged with the duty of looking out for him, it is obviously neither customary nor practicable for them to keep him under observation continually, or follow him wherever he may go. If he is to be protected, the person who may do it with the least inconvenience is the one upon whose land he strays, and the interest in unrestricted freedom to make use of the land may be required, within reasonable limits, to give way to the greater social interest in the safety of the child.'' (Prosser on Torts, 617, § 77.)

A duty rested on defendant Vaughn C. Golden to protect the young and heedless from themselves and guard them against perils that reasonably could have been foreseen. The trial court was warranted in finding that the circumstances here called the duty into play. The question whether injury to a child legally incapable of negligence will import negligence to the owner or possessor of the injuring instrumentality depends on the circumstances of each case and is peculiarly one for the trier of fact. It was for him to say whether the tubular frame trailer was a dangerous instrumentality of a class which was an unreasonable risk of serious bodily harm to children of tender years upon which they were likely to trespass.[2] The evidence is uncontradicted that defendant Vaughn C. Golden knew that children of tender years, including plaintiff, strayed onto his

[2]Instrumentalities held to come within the rule are: a guy wire hanging from an electric pole, *Pierce* v. *United Gas & Elec. Co.,* 161 Cal. 176 [118 P. 700]; a pushcar loaded with steel rails, unguarded on a skeleton track in a public street, *Cahill* v. *E. B. & A. L. Stone Co.,* 167 Cal. 126 [138 P. 712]; wet lime and mortar in a box on a sidewalk in front of a building under construction, *Katz* v. *Helbing,* 205 Cal. 629 [271 P. 1062, 62 A.L.R. 825]; a coffee grinder in the aisle of a store, *Crane* v. *Smith,* 23 Cal.2d 288 [144 P.2d 356]; a wagon without bed or frame attached to the rear of a slowly-moving house, *Skinner* v. *Knickrehm,* 10 Cal. App. 596 [102 P. 947]; a stope driven up through the floor of a tunnel in a mine, together with cars used in working the mine, *Faylor* v. *Great Eastern Q. Min. Co.,* 45 Cal.App. 194 [187 P. 101]; a two-wheeled trailer with a firebox and vat of boiling and smoking tar and a stick protruding with which to stir the mass, *Morse* v. *Douglas,* 107 Cal.App. 196 [290 P. 465]; a power pole on public property with spikes within easy reach of a 12-year-old child, *Brown* v. *Southern Calif. Edison Co.,* 120 Cal.App. 102 [7 P.2d 770]; an escalator in a department store, *Kataoka* v. *May Dept. Stores Co.,* 60 Cal.App.2d 177 [140 P.2d 467]; a dilapidated and uninhabited shack with a broken board furnishing easy entrance, *Marino* v. *Valenti,* 118 Cal.App.2d 830 [259 P.2d 84].

property and played on the tubular frame trailer and other contrivances and material he kept there. It was for the trial court to say whether the condition was one which he knew or should have known and which he realized or should have realized involved risk of serious bodily harm to children of tender years. It appears to be conceded that plaintiff because of her youth did not realize the risk involved in playing on the tubular frame trailer. It was also for the trier of fact to say whether defendant Vaughn C. Golden should have guarded against injury to the trespassing children. ■ In a word, whether the facts exist which bring the doctrine of injuries to trespassing children into play is generally a question for the trier of fact. (*Pierce* v. *United Gas & Elec. Co.*, 161 Cal. 176, 182 [118 P. 700] ; *Doyle* v. *Pacific Elec. Ry. Co.*, 6 Cal.2d 550, 552 [59 P.2d 93] ; *Faylor* v. *Great Eastern Q. Min. Co.*, 45 Cal.App. 194, 204 [187 P. 101] ; *Long* v. *Standard Oil Co.*, 92 Cal.App.2d 455, 466 [207 P.2d 837].)

There was evidence that plaintiff was permitted to carry a soft drink bottle with a nipple on it containing water while she played, and that fragments of such a bottle with a nipple spotted with blood was found underneath the trailer shortly after the accident. It is argued that plaintiff was injured by breaking the bottle, that if she fell from the trailer it was the breaking of the bottle which was the proximate cause of the injury and not the trailer. ■ However there was evidence that plaintiff did not have a bottle with her at the time of the accident. Since plaintiff fell on the trailer and the court impliedly found on substantial evidence she was cut by the trailer in falling, it cannot be said that the broken bottle was the proximate cause of the injury. ■ The proximity of one fact to another, and their relation to each other, are normally for the trier of fact. ■ The implied finding that the accident was proximately caused solely by the negligence of Vaughn C. Golden is supported by ample, substantial evidence.

*The Case Against Gertrude G. Golden, Earl M. Golden, and Goldie A. Golden*

■ The general rule is that a grantor of land is not subject to liability for injury sustained by a third person while upon the land after the grantee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time the grantee took possession. The relation of grantor and grantee terminates on the transfer of

possession. *Stone* v. *Heyman Bros.*, 124 Cal.App. 46 [12 P.2d 126], declares (p. 48):

"The rule applicable to the vendor of realty is stated in *Upp* v. *Darner*, 150 Iowa 403 [Ann.Cas. 1912D 574, 32 L.R.A. N.S. 743, 130 N.W. 409, 410], as follows: 'After the owner of such premises has disposed of them he is no longer liable for what may happen thereon for the reason that he is in no position to control the use thereof.'"

The Restatement declares, "A vendor of land is not subject to liability for bodily harm caused to his vendee or others while upon the land by any dangerous condition, whether natural or artificial, which comes into existence after the vendee has taken possession," (Rest., Torts, § 351); "[e]xcept as stated in § 353, a vendor of land is not subject to liability for bodily harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession," (Rest., Torts, § 352). Section 353 treats of concealed and undisclosed conditions known to a grantor and has no application to the facts of the present case.[3]

Dean Prosser says: "The vendor of real property who parts with title, possession and control of it ceases to be either an owner or an occupier, and ordinarily is permitted to step out of the picture and shift all responsibility for its condition to the purchaser." (Prosser on Torts, 644, § 80.)

In *Slavitz* v. *Morris Park Estates*, 98 Misc. 314 [162 N.Y.S. 888], an infant of tender years fell into an unguarded pit and was killed. The accident was due to failure to cover or guard the pit. The action was against, among others, the grantor of the person who was in possession at the time of the accident. The court held (162 N.Y.S. 889):

"When the accident happened the demurrant no longer had any control over the property, and it had no authority to enter the same for the purpose of inclosing the pit, or to alter

---

[3]Section 353 reads: "A vendor of land, who conceals or fails to disclose to his vendee any condition whether natural or artificial involving unreasonable risk to persons upon the land, is subject to liability for bodily harm caused thereby to the vendee and others upon the land with the consent of the vendee or his sub-vendee, after the vendee has taken possession, if

"(a) the vendee does not know of the condition or the risk involved therein, and

"(b) the vendor knows of the condition and the risk involved therein and has reason to believe that the vendee will not discover the condition or realize the risk."

its condition, even if it desired to do so, or for any purpose whatever. It could no longer control the entrance of persons upon the property, nor was it able to give any protection to persons to whom the owner at the time of the accident had given either express or implied permission to enter the premises, nor was it then under any legal obligation to do so.

"The complaint alleges that the deceased was at the time of the accident an infant of tender years, and also that children were accustomed to play on the premises with the consent of the defendants. Such a consent, so far as the demurrant is concerned, was revoked by its conveyance of the land to the defendant Schilling. [Citations.]

"If a consent of the character claimed by the plaintiff was in force at the time of the accident, it obviously could be given only by the then owner of the property, and therefore whatever duty of protection arose from such consent fell on him. The demurrant clearly owed no duty to protect those whom such owner had invited to come on his land. There was thus no connection between the demurrant and the accident. Under the circumstances disclosed, the demurrant cannot be held liable for the accident. . . .

" 'The reason why an action cannot be sustained in such a case is that there is no connection between the wrong done and the person whom it is sought to charge for the consequences. The wrongdoer has not at the time any control over the subject-matter, or any power or right to remedy the evil. The damage in all such cases arises in fact from the continued use of the defective subject, and with that the builder, who has parted with the title, possession, and control of it, has not and cannot have anything to do. The entire agency is at the time in the existing proprietors, by whom or through whose means the wrong is perpetrated.' "

*McQuillan* v. *Clark Thread Co.*, 12 N.J.Misc. 409 [172 A. 370], was an action against one who had sold and transferred without reservation property 5 days before injuries were sustained thereon by the plaintiff. Holding the grantor not liable, the court quoted from *Palmore* v. *Morris,* 182 Pa. 82 [37 A. 995, 998, 61 Am.St.Rep. 693], in which the day before the accident the defendant had conveyed the property by deed, thus (172 A. 371):

" 'But this is not a letting of the land by a landlord to a tenant; it is an absolute sale, whereby the owner divests himself of title, and all right to possession, or of re-entry for repairs, or for any other purpose. Any future possession in face of his deed, unless there be an independent stipulation

to the contrary, would be a palpable trespass; and with his surrender of possession all the duties incident to ownership, as to him, were at an end.' ''

And continued:

''It therefore appears that a cause of action founded upon negligence in regard to real property can be maintained only against the owner or occupier; i. e., the one in control. Where there has been a transmutation of title and possession, the former owner has no control over the premises, and he does not have the right of possession nor the right of entry. Any attempt to make entry on his part for whatever purpose would put him in the category of a trespasser. Having divested himself of all rights in regard to the property, he owes no duty with respect to the condition of the premises. Therefore the negligent condition which may exist on the premises to the injury of any member of the public, whether he be a licensee or invitee, is not actionable as against the former owner.

''[P. 372.] It would be a dangerous principle to declare that liability for injuries sustained by reason of negligence or the maintenance of a nuisance continues after transfer of title. How long would the liability continue? Where would the line be drawn?''

In *Smith* v. *Tucker*, 151 Tenn. 347 [270 S.W. 66, 41 A.L.R. 830], it is said (270 S.W. 70):

''Whatever may be the reason, no case can be found in the books where the vendor has been held liable in damages to the vendee, or to third persons, for personal injuries arising from defects in the premises.'' (See also *Wiles* v. *Association of Com. of Decatur*, 332 Ill.App. 375 [75 N.E.2d 526]; *Combow* v. *Kansas City Ground Inv. Co.*, 358 Mo. 934 [218 S.W.2d 539, 8 A.L.R.2d 213]; *United States* v. *Inmon* (5 Cir.), 205 F.2d 681; 65 C.J.S. 607, § 93; 38 Am.Jur. 753, § 94.)

▆▆▆ After the owner of property has disposed of it he is no longer liable for what may happen thereon for the reason that he is in no position to control the use thereof and his duty to children of tender years who come thereon is at an end. After defendants Gertrude G. Golden, Earl M. Golden, and Goldie A. Golden conveyed the property they had no control over the use of it and were under no duty to children of tender years who went thereon. After the conveyances they could not go on the property even to do whatever may have been reasonably necessary to protect such children from the danger of playing on the trailer. They could not control

the grantee, could not dictate who should be permitted on or kept off the property, and could not have done anything about the trailer if they had been so disposed. It is fundamental that the first requisite in establishing negligence is to show the existence of a duty which it is claimed has not been performed. There can be no negligence unless there is a duty which has been violated. (*Neuber* v. *Royal Realty Co.*, 86 Cal.App.2d 596, 612 [195 P.2d 501].) By the conveyances, defendants Gertrude G. Golden, Earl M. Golden, and Goldie A. Golden divested themselves of title and all right to possession and of reentry for any purpose; all duties of ownership as to them were at an end. They owed no duty to trespassing children thereafter.

 We are not to be understood as declaring there can be no exception to the rule. (See *Palmore* v. *Morris*, 182 Pa. 82 [37 A. 995, 999, 61 Am.St.Rep. 693]; *United States* v. *Inmon* (5 Cir.), 205 F.2d 681, 684; Rest., Torts, § 353; Prosser on Torts, 644, § 80.)

Plaintiff cites section 373 of the Restatement of Torts.[4] It has no relevancy to the facts. It treats of liability for an artificial condition on land which, as created, involves an unreasonable risk to persons *outside* the land.

 We are constrained to comment on the deficiencies in appellants' brief. It does not contain a statement of the nature of the action or of the relief sought or the judgment of the superior court.[5] The points made do not appear separately and there is not a single reference to the record.[6]

[4]Section 373 reads: ''A vendor of land, who has created thereon a structure or other artificial condition which, as created, involves an unreasonable risk to others outside the land, because of its plan, construction, location or otherwise, is subject to liability for bodily harm thereby caused to them after his vendee has taken possession.''

[5]Rule 13 of the Rules on Appeal provides: ''Every appellant shall file an opening brief, except that an appellant may join in a brief or may adopt by reference any brief in the same or companion cases. The opening brief shall contain a statement of the case, setting forth concisely, but as fully as necessary for a proper consideration of the case, in such order as the appellant may prefer, the nature of the action or proceeding and the relief sought, a summary of the material facts, and the judgment or ruling of the superior court. The statement shall be accurate and confined to matters in the record on appeal.''

[6]Rule 15 of the Rules on Appeal provides: ''Each point in a brief shall appear separately under an appropriate heading, with subheadings if desired. Such headings need not be technical 'assignments of errors' but should be concise headings which are generally descriptive of the subject matter covered. The statement of any matter in the record shall be supported by appropriate reference to the record. Every brief shall be prefaced by a topical index of its contents and a table of authorities, separately listing cases, statutes, court rules, constitutional provisions, and other authorities.''

For failure to comply with the rules, the judgment should be affirmed without more. However, in the interests of justice, we have considered the appeal on its merits.

The judgment in favor of plaintiff and against defendant Vaughn C. Golden is affirmed. The judgment in favor of plaintiff and against defendants Gertrude G. Golden, Earl M. Golden, and Goldie A. Golden is reversed.

Wood (Parker), Acting P. J., and Ashburn, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.