Filed 7/24/24  Turner v. G J Property Services CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| KARI TURNER et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>G J PROPERTY SERVICES, INC.,<br><br>Defendant and Respondent. | B319443<br><br>(Los Angeles County Super. Ct. No. 21STCV15464) |


APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel M. Crowley, Judge.  Affirmed.

Law Offices of Gabriel H. Avina and Gabriel Herrera Avina for Plaintiffs and Appellants.

Law Offices of Garber and AV and Marc H. Garber; Greines, Martin, Stein & Richland, Cynthia E. Tobisman, David E. Hackett and Marco A. Pulido for Defendant and Respondent.

Plaintiffs and appellants Kari Turner and her minor daughter Emilia Turner (collectively the Turners) appeal from a summary judgment in favor of defendant and respondent G J Property Services, Inc. (GJPS) in this premises liability action.[1] On appeal, the Turners contend GJPS had a duty to inspect the premises for dangerous conditions at the time of leasing and remedy dangerous conditions that reasonably should have been discovered, and that GJPS's breaches of duty caused Emilia to suffer injuries. We agree with the trial court that GJPS did not owe a duty to the Turners at the time of the accident injuring Emilia, because it had not had possession or control of the rental property for three years. Therefore, we affirm.

## FACTS

In December 2015, GJPS was the property manager for a single-family rental property on Chestnut Avenue in Long Beach. The home has double-sided floor heaters in two areas, one serving the living room area and one serving the hallway area. Each heater has a stationary floor grate and a removable wall grate. If GJPS received a report about a heater defect, the company would arrange for a heating and air conditioning technician to inspect or repair the heater.

In December 2015, prior to the Turners' tenancy, the hallway floor furnace was nonoperational. The company that GJPS initially contacted to inspect the floor furnace concluded

---

[1] Because the plaintiffs share the last name Turner, they will be referred to individually by their first names for ease of reference. Kari is the guardian ad litem for Emilia.

2

obsolete parts were leaking gas and recommended replacement of the full unit. GJPS arranged for Gorsuch Plumbing to inspect the floor furnace. After a concrete barrier was removed to allow access to the heating unit, Gorsuch was able to replace the gas valve and confirm the furnace was working well.

In September 2016, GJPS showed the premises to Kari. The move in checklist stated under furnace/heater: "Ok – [check] when gas on." After the gas was turned on, the hallway heating unit was nonoperational. GJPS arranged for Gorsuch to inspect and repair the heating system again. Gorsuch found the gas valve under the house was not connected. Gorsuch repaired the connection, lit the pilot, and confirmed the heating system was working properly.

In October 2016, Kari and her husband moved in. They reported to GJPS that the living room floor furnace was not working. Gorsuch visited the home, re-lit the pilot light, and cleaned a part. After testing, Gorsuch confirmed the furnace was working well.

In July 2017, the Turners' first child was born. A photograph taken in August 2017 by Kari's husband in the living room showed the heating grate in the living room was missing a safety latch, which prevents the grate from falling off the wall.

GJPS did not receive any complaints of injuries from the heating system during the time that they managed the property. In January 2018, the property owner terminated GJPS as the property manager, primarily because GJPS relied on an expensive in-house maintenance crew rather than competing vendors. Effective February 1, 2018, Pabst Kinney & Associates took over as property manager.

3

Emilia was born in June, 2020. On February 17, 2021, Kari left the living room briefly to put water in her older daughter's cup. Emilia had only recently begun crawling. During the few seconds that Kari was out of the room, Emilia crawled to the heater. The grate fell on Emilia's hand and she suffered severe burns.

## PROCEDURAL BACKGROUND

On April 23, 2021, Kari filed an action on behalf of herself and as guardian ad litem for Emilia against several defendants, including GJPS, seeking damages for negligence and premises liability.

GJPS filed a motion for summary judgment. GJPS argued that it was not aware the heating grate could rise to a temperature high enough to cause burns, it ceased to be the property manager after January 2018, the Turners had no evidence of when the unsafe condition became present, and therefore, the Turners could not demonstrate that the unsafe condition existed when GJPS managed the property. There was no evidence that an act or omission by GJPS was a substantial factor in the alleged injuries and GJPS did not breach its duty of care to the Turners in its management of the property, because GJPS was no longer the property manager after January 2018.

The Turners filed an opposition to the motion for summary judgment. The opposition argued that GJPS breached its duty of care by failing to conduct reasonable inspections and/or replace the obsolete heater prior to leasing the property to them.

In support of the opposition, the Turners submitted the declaration of Jeff Hughes, who is an expert in construction

4

management, safety, property condition assessments, and engineering. In his opinion, a reasonable inspection of the heaters during the turnover from one tenant to another by the property owner or the property management company would have uncovered the missing latch from the living room removable heater grate. In his opinion, periodic inspections of the heaters by the property owner or the property management company would have uncovered the missing latch. No term of the lease transferred the obligation to service or maintain the heaters to the lessee. In addition, the lease reserved a right of inspection to the lessor and to make such repairs or perform much maintenance as the lessor may deem necessary or desirable. The heater unit has been maintained below the minimum standard, not in a good and safe condition. The cost to repair the heater unit was minimal compared to the risk of harm to the occupants.

GJPS filed a reply.[2] GJPS argued the August 2017 photo of the living room was too blurry to establish whether the safety latch was present and there was no evidence the heating grate could reach temperatures high enough to have caused Emilia's injuries while GJPS managed the property. Moreover, the Turners' evidence showed there was regular maintenance of the heating system and that the heating system was working well after completion of repairs.

A hearing was held on January 5, 2022. The trial court noted, "I just don't see the argument that simply because this heater is obsolete that it puts GJPS on notice that this was a potentially dangerous condition and such that it would retain

---

[2] The motion filed by GJPS with this appellate court on October 23, 2023, to augment the record with pleadings from the superior court file is granted.

liability for anything wrong with the heater for years after it ceased being the property manager."

The trial court granted the motion for summary judgment. The trial court found GJPS met its burden to show the Turners could not establish breach of duty or causation because it ceased being the property manager in January 2018, prior to the incident in February 2021. The evidence showed GJPS did not control or manage the property, and therefore, did not cause the plaintiffs' injuries or breach a duty of care by failing to prevent the injury in February 2021.

In addition, GJPS showed breach of duty and causation could not be established because it did not have actual or constructive knowledge of the dangerous condition that caused the plaintiffs' harm. Kari did not notify GJPS about the condition prior to the incident, and GJPS did not cause the injury or breach a duty of care by failing to repair a condition that it had no knowledge of.

The burden shifted to the Turners, who did not meet their burden, because they offered no evidence that the condition existed when GJPS managed the property or that GJPS had notice of the condition. As a result, the elements of causation and breach of duty could not be established.

The trial court entered judgment in favor of GJPS on February 25, 2022. The Turners filed a timely notice of appeal.

# DISCUSSION

## <u>Standard of Review</u>

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fns. omitted.) In ruling on the motion, the court must draw all reasonable inferences from the evidence in the light most favorable to the opposing party. (*Id.* at p. 843.)

"The defendant is not required conclusively to negate an element of the plaintiff's cause of action. The defendant need only show the plaintiff cannot establish at least one element of the cause of action, such as by showing the plaintiff does not possess, and cannot reasonably obtain, needed evidence. [Citation.]" (*Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1438.) The burden then shifts to the plaintiff to show a triable issue of material fact exists. (§ 437c, subd. (p)(2).) "The plaintiff . . . shall not rely upon the allegations . . . of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (*Ibid.*) We review a

7

decision on a summary judgment motion de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

## No Duty Without Ownership, Possession, or Control

The Turners contend that the trial court erred by finding GJPS had no duty of care at the time of the incident because it did not have ownership, possession, or control of the premises. We find no error.

"Every person has a duty to exercise, 'in the management of his or her property or person,' reasonable care for the safety of others. [Citations.] This duty is not absolute; a defendant generally does not have an affirmative duty to protect others when he or she has not created the peril or increased the risk of danger. [Citation.] ' "The proper test to be applied to the liability of the possessor of land in accordance with [Civil Code section 1714] is whether in the management of [one's] property [one] has acted as a reasonable [person] in view of the probability of injury to others." ' [Citation.] This duty is not limited to one who holds title over the land ' " 'but, rather, [is] owed by the person in possession of the land . . . because [of the possessor's] supervisory control over the activities conducted upon, and the condition of, the land.' " ' (*Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1157–1158 (*Alcaraz*).) To comply with this duty, the possessor of land must ' " ' " 'inspect [the premises] or take other proper means to ascertain their condition' " ' " and, if a dangerous condition exists that would have been discovered by the exercise of reasonable care, has a duty to give adequate warning of or remedy it.' [Citation.]" (*Moses v. Roger-McKeever* (2023) 91 Cal.App.5th 172, 178–179.)

8

However, "[a] defendant cannot be held liable for the defective or dangerous condition of property which it did not own, possess, or control. Where the absence of ownership, possession, or control has been unequivocally established, summary judgment is proper. [Citations.]" (*Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 (*Isaacs*).)

The liability of a former property manager for injuries sustained on the property is analogous to the liability of a former owner of real property after selling the property. After disposing of real property, a former owner is generally no longer liable for injuries on the property because that party is no longer able to control the use of the property. (*Copfer v. Golden* (1955) 135 Cal.App.2d 623, 631.) A former owner who has transferred ownership and control may not enter the property to cure any deficiency and cannot control the entry of persons onto the property or provide safeguards for them. At the time of the injury, the former owner has no control over the dangerous condition and has no power to correct or remedy it. (*Id.* at p. 632.) Because the grantor is no longer able to control the use of the property, the grantor is permitted to shift all responsibility for the condition of the property to the grantee. (*Id.* at p. 631.)

For example, in *Preston v. Goldman* (1986) 42 Cal.3d 108, 110, a couple designed and built a pond on their residential property, which they later sold. The new owners leased the property to tenants. A visitor's child was severely injured after falling into the pond and sued the former owners, seven years after they sold the property. (*Id.* at p. 111.) Relying on the reasoning of *Copfer* and *Isaacs*, the California Supreme Court held that ownership and control were necessary to ascribe liability for a dangerous condition of property. (*Id.* at p. 119.)

9

Unless the prior landowner was a professional contractor or builder of the entire property, a prior landowner is generally not liable for having created a negligent condition on the land. (*Id.* at p. 117.)

Similarly, in *Lorenzen-Hughes v. MacElhenny, Levy & Co.* (1994) 24 Cal.App.4th 1684, 1686, a tenant hired a contractor for a minor remodeling project. The tenant later transferred the lease to Lorenzen-Hughes' employer. (*Ibid.*) After a cabinet came loose and injured Lorenzen-Hughes, she sued the former tenant for negligence and premises liability, nine years after the former tenant had relinquished possession and control over the property. (*Ibid.*) The court found there was no liability because the former tenant had no possession or control at the time of the accident. (*Id.* at p. 1688.)

In this case, the trial court properly concluded that GJPS did not owe a duty to the Turners at the time of the incident because GJPS had not had possession or control over the property for more than three years. At the time of Emilia's injury, GJPS had no control over the dangerous condition and no right to enter the property to cure any deficiency. In addition, there was no evidence that the safety latch was missing when GJPS showed the property to Kari and turned over possession of the premises to the Turners. After the Turners took possession, the living room heater was nonoperational and a plumber visited to make repairs. The earliest evidence that the latch was missing was a photo taken ten months later. There was no evidence that GJPS ever became aware of the dangerous condition, which was not a latent or concealed defect. The trial court properly granted summary judgment in favor of GJPS on the issue of duty.

10

## DISPOSITION

The judgment is affirmed.  Respondent G J Property Services, Inc., is awarded its costs on appeal.
NOT TO BE PUBLISHED.


MOOR, J.


We concur:


BAKER, Acting, P. J.


KIM, J.


11